# Franklin Sugar Refining Co., Appellant, *v.* Kane Milling & Grocery Co.

*Contract—Sales—Memorandum—Custom—Trade usage—Principal and agent—Act of May 19, 1915, P. L. 543—Words and phrases—Differentials—Sugar.*

1. No trade usage or custom can overturn the express requirement of a statute that no contract of sale shall be enforceable unless a note or memorandum in writing shall be signed by or for the vendee.

2. Where brokers deal on behalf of both seller and purchaser, and undertake a joint mission, it must appear, and the memoranda must show they signed for the purchaser or the contract will not be binding.

3. Where a memorandum of sale fails by proper reference to include as part thereof a separate paper or writing or reference to a trade usage or custom, to explain words used in the memorandum, such additions cannot be considered as completing or making perfect, under the Sales Act of May 19, 1915, P. L. 543, what is otherwise imperfect.

4. Although there is a marked distinction between a usage and a custom, the courts have for a long time used custom as a term coördinate with usage.

5. A custom, in order to be binding, must be certain, continuous, uniform and notorious.

6. A custom that depends for its life on the act or will of a business house, that changes as circumstances and its business requirements demand, cannot in law be called a custom.

7. If the consent or permission of one of the parties is necessary before a custom or usage can be effective, it is not a rule of conduct, binding alike on both parties, regardless of consent.

8. Parties may conduct their business in such a way as to use a differential as a schedule or means by which purchase or sale of a commodity may be carried on, but when they wish to do so they must comply with the Sales Act of 1915.

9. In such case, there must be something in the contract of sale itself or the memorandum expressing the contract, which, by its own language, as interpreted by its trade meaning, leads inevitably and directly to the thing they wish to do, to wit, incorporate the differential in the memorandum of sale; it cannot be through the debatable ground of oral evidence which brings into play knowledge, and its extent, of the particular thing sold or delivered, as well as its price.

10. A memorandum of the sale of sugar which states the quantity and specifies a price as "basis" is insufficient under the statute, when it contains no system of variations, understood by both parties, which of itself, or by any known schedule or rule of variation, could give the prices to be affixed opposite differentials in schedules used by the trade.

Argued April 30, 1923. Appeal, No. 323, Jan. T., 1923, by plaintiff, from judgment of C. P. McKean Co., Oct. T., 1922, No. 138, sustaining statutory demurrer to statement of claim, in case of Franklin Sugar Refining Co. v. Kane Milling & Grocery Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ. Affirmed

Assumpsit on contract of sale of sugar. Before BOUTON, P. J.

The contract is identical in form with the one reproduced on page 195 of volume 274 Pa. Reports.

Plaintiff's statement averred, inter alia, as follows:

"11. In the sugar trade the words 'Basis 22.50,' whenever used in any transaction between refiners of cane sugar and their customers, have and had at all times a particular technical trade meaning, different from the

usual meaning ascribed to these words, which particular meaning, in accordance with said trade usage, was and is as follows:

" 'The price of fine granulated sugar packed in bulk in barrels or 100-lb. bags is 22.50 cents per pound, and the price of any other grade or package is determined by adding to or subtracting from said price the amount of the now existing standard trade differential applicable to such other grade or package.'

"12. At the time of the making of the contracts here in suit, and for a long time prior thereto, there were in the sugar trade certain fixed and determined standard trade differentials, which were known to and recognized and applied by all refiners, brokers, and dealers in refined cane sugar in all transactions involving sales, purchases, or quotations of refined cane sugar at a basis price.

"13. The various grades of sugar manufactured or sold by plaintiff and the kind of packages used, at the time of the making of the contracts here in suit, together with the respective standard trade differentials (in cents per pound) applicable to each such grade or package were as follows": (grade and differentials enumerated in a schedule).

Other facts are stated in the opinion of the Supreme Court.

Demurrer sustained. Plaintiff appealed.

*Error assigned* was judgment, quoting grounds of demurrer and judgment.

*George W. Pepper,* with him *Thomas Reath, Jr., Guy B. Mayo* and *Henry S. Drinker, Jr.,* for appellant.— Though a memorandum might not indicate to a person unacquainted with trade usages which party was buyer, and which seller, yet if a person cognizant of such usages would be able to determine the relation of the parties, parol evidence is admissible to show this and the memo-

randum is sufficient: Newell v. Radford, L. R. 3 C. P. 52; Salmon Falls Mfg. Co. v. Goddard, 55 U. S. 446.

The technical trade meaning of the words "Basis 22.50" may be shown by parol and these words thus translated into words of common understanding: McKnight v. Gas Co., 146 Pa. 185; Franklin Sugar Refining Co. v. Howell, 274 Pa. 190; Warner-Godfrey Co. v. Sheinman, 273 Pa. 105; Electric Reduction Co. v. Steel Co., 276 Pa. 181.

The exact amount of the differentials may be shown by parol: Williams Whitman & Co. v. Worsted Co., 206 Fed. 549.

A written contract, or a memorandum under the Sales Act, need contain only the express agreement of the parties. Those elements which become part of the contractual obligation by operation of law, through explanation of trade terms used in other than their usual sense, or by custom or trade usage, need not specifically appear: Electric Reduction Co. v. Steel Co., 276 Pa. 181; Franklin Sugar Refining Co. v. Spruks, 23 Lack. Jur. 313.

That plaintiff's statement averred a trade custom to explain the terms used in the contract, distinguishes it from the Franklin Sugar Co. Case, 274 Pa. 190; Franklin Sugar Refining Co. v. Ellsworth & Co., 22 Luz. Leg. Reg. 207, 209.

*J. E. Mullin,* of *Mullin & Woods,* for appellee.—The trade usages alleged in the statement of claim are not pertinent to the facts in this case.

The sales memoranda are not signed by or on behalf of appellee.

The case of Franklin Sugar Refining Co. v. Howell, 274 Pa. 190, governs this case.

The memoranda are too vague, indefinite and uncertain, however construed, to make contracts: Edgcomb v. Clough, 275 Pa. 90; Ogden v. Traction Co., 202 Pa. 480;

Smith v. Iron & Steel Co., 208 Pa. 462; Butler v. Kemmerer, 218 Pa. 242; Beaver v. Slane, 271 Pa. 317.

OPINION BY MR. JUSTICE KEPHART, June 23, 1923:

The court below, in sustaining the demurrer to plaintiff's statement of claim, relied on Franklin Sugar Refining Co. v. Howell, 274 Pa. 190. It is not necessary to restate what was there so lately decided; we will here merely point out what to us seems a sufficient barrier to plaintiff's right to recover.

Plaintiff avers in its statement that the J. H. Huston Co., Inc., was a merchandise broker, "duly authorized by defendant, to the knowledge of plaintiff, to make on behalf of defendant the contracts hereinafter referred to," and "duly authorized by plaintiff, to the knowledge of defendant, to make on behalf of plaintiff the contracts hereinafter referred to," and that, "pursuant to said authority......broker, on or about the dates as follows, made and effected certain contracts......, and pursuant to said authority, broker, on or about said respective dates, made and executed on behalf of plaintiff and defendant certain sales memoranda evidencing the terms of said contracts."

However, an examination of these sales memoranda shows they were only signed "Sold by J. H. Huston Co., Inc." It thus appears, so far as the writing evidences, that Huston Company was the seller, or represented someone as seller. Nowhere did appellee, or any one for it, sign any of the memoranda on which plaintiff relies for recovery, yet this is essential under section 4 of the Sales Act. The fact that the broker signed for plaintiff vendor only is consistent with the papers themselves, and with no other conclusion.

If the words "Sold by J. H. Huston Co., Inc.," etc., are intended to hold appellee, then appellee is the seller. The contracts not being signed by the buyer as required are fatally defective, and cannot be enforced. Plaintiff does not set up a "trade usage or custom" to avoid the

effect of the writing just quoted, even if such an averment could legally have the effect stated. If it so averred, the conclusive answer would be that no "trade usage or custom" could overturn the express requirement of the statute that no such contract shall be enforceable unless a note or memorandum in writing shall be signed by or for the vendee. The letter from appellee is not sufficient to overcome this defect. It does not purport to ratify a signature that was not made in its behalf.

A most casual observer, examining these memoranda, would immediately conclude the sugar was sold by Huston Co., as it states, and not purchased by them, as it does not state. There is nothing unusual or technical in these words; the signature is for the seller only. Where brokers deal on behalf of both seller and purchaser, and undertake a joint mission, it must appear, in this class of cases, and the memoranda must show they signed for the purchaser, or the contracts will not be binding. We might dismiss the appeal on this ground alone.

Plaintiff contends it may assert a trade usage or custom as amplifying, explaining and adding to the memoranda,—the averment will be found in the statement of facts,—and this is so if it is meant simply to show the meaning, in the trade, of the words actually used in the contract. While there is a marked distinction between a usage and a custom, courts have for a long time used custom as a term coördinate with usage, and it will, in this opinion, be so regarded.

It is not clear to us, under the present memoranda, how, by custom or trade usage, the words "basis 22.50" can be enlarged to the extent required to enable plaintiff to recover. We do not deny its right to amplify, explain or refer as part thereof to any business method, schedule or scale of prices contained in a separate document, where the memorandum itself contains all the necessary requirements of an express contract; but when it falls short of it, and fails by proper reference to include as part thereof the separate paper or writing desired, the

addition cannot be considered as completing or making perfect under the statute what is otherwise imperfect.

It will be apparent, when other paragraphs of the statement are examined, the base price of sugar went down to 12.74 cents three months after the contracts were made; the differentials for the other grades were less; it is stated they were *"not higher than those set forth in paragraph 13,"* being the differentials supposed to exist when the memoranda were made. How much lower, plaintiff does not aver. It says the price of any grade of sugar is determined "by adding to or subtracting from said price the amount of the *now* existing standard trade differential applicable to such other grade or package." From the use of the word "now" and from the paragraphs specifying the price of sugar in August and September, it is conclusive there is no fixed differential [price], and it is not, or could not be, contended for, but it is one that shifts from time to time. It is necessary therefore to go to some other paper which changes from time to time, which has no fixed standard in the trade for its determination, so that any one might or could know or ascertain by some rule, equation or known variation, per cent or otherwise, what the prices were or would be; this could be learned only as promulgated by those in control. The differential, quoad differential, containing prices fixed by others, varying in different localities, might be a method of conducting business, but, considered as a custom or trade usage to toll the operation of the statute, it necessitates much consideration.

As stated in Albus v. Toomey, 273 Pa. 303, 306, a custom, in order to be binding, must be certain, continuous, uniform and notorious. It must be so fixed that those engaged in the business may know what to meet. A custom that depends for its life on the act or will of a business house, that changes as circumstances and its business requirements demand, could scarcely in law be called a custom. For illustration, "a custom to pay two pence an acre in lieu of tithes is good; but a custom to

pay sometimes two pence and sometimes three pence as the occupier of the land chooses is bad on account of its uncertainty": 17 C. J. 451. A usage among factors was held inadmissible because it left each factor to determine for himself the grade of goods subject to the operation of such usage: Wallace v. Morgan, 23 Ind. 399, 408.

"A loose and variable practice will not be allowed to control the rights of the parties, nor will an alleged usage which leaves some material element to the discretion of the individual": 17 C. J. 453, notes 50 and 51. Thus, to establish by "constructive measurements, as made by the Bricklayers' Association," a rule called a custom, controlling prices, "the percentage of which varies from twenty-five to three hundred per cent......from month to month, almost from day to day, as prices of labor and material advance, this scale is advanced," of which all contractors are aware, is not such rule, practice or arrangement as can be regarded as a usage or custom, though continued for a long period of time. This court, after quoting the rule as to a good custom or usage, says, "When a custom is so established, parties may be presumed to have acted with reference to it, and the law will in some instances write it into their contract. But, since the world began, the law never wrote into any man's contract such a usage or custom as this. It has no element of certainty. In the language of plaintiff's own witness, 'it varies from month to month, almost from day to day'": Ambler v. Phillips, 132 Pa. 167, 173, 174.

To establish as a custom or trade usage a sliding scale of prices ascertained by the plan here adopted, would considerably broaden the historic definition of those terms. From the statement of claim the only thing that appears fixed as to plaintiff is that customers, in dealing with it, had in mind a schedule or differential. The only thing certain as a custom is the "differential," for the changeable things, to wit, the prices on the classifications in the differential, are uncertain. They are based on value and profit determined by plaintiff alone or in com-

bination with others, with no fixed rule to guide, having net profit as an important factor. They cannot, because of their very uncertainty in the particular differential, be established as a custom so as to comply with the Sales Act. The effect of such a custom would be variable, fluctuating as much as the base price of the commodity sold. If the base was a fixed figure, from which the selling prices and differential might be found by a known rule applicable to the differential as applicable to selling price, some ground of certainty would be established. But this would interfere no doubt when a fluctuating abnormal profit was desired.

We do not contend that a custom explaining a term in merchandising, even extending its contractual effect, or a course of dealing or method of conducting business, could not be established as argued by appellant and supported by the authorities; these deal with certain fixed matters. The question is not whether this so-called "custom" or method of doing business may lawfully exist and become a part of a memorandum of sale so as to completely convey the ideas of the parties as though written out in extenso, but whether this proposed trade custom or method of doing business satisfies the requirements of the statute, without more specific reference in the memorandum than is here set forth, or without being so connected with the memorandum as to be open to the proof suggested. We hold it does not.

Here we have a number of items, forty in all, to be furnished as the seller's business requires, in receptacles, quantities and prices different from those expressed in the memoranda. These prices are not fixed as a custom should be, but depend on fluctuating matters, the effect of which the seller alone determines when delivery is to be made. "If the consent or permission of one of the parties is necessary before the custom or usage can be effective, it is not a rule of conduct, binding alike on both parties, regardless of consent,—it is not a trade usage or custom. There is no such thing as discretion in

trade usages or customs. They are absolute and final, unless set aside by agreement or statute": Albus v. Toomey, supra, 306. As stated, these differentials are determined through the medium of the vendor on the basis of demand and cost of production,—a sliding scale of prices that changes from time to time. Under these memoranda, purchasers might select from the assortment in the differential, and be compelled to take something else. The something else, chosen by the sellers and forming no part of the alleged trade custom, is what completes the sale. Until this takes place, the buyer could not enforce the contract, though it is urged he may be held if he does not act in this regard. Until the seller determines what character of sugar he has to give, and in view of the condition of the market, at what price, it must be paid for, the buyer can do nothing and get nothing. So also the seller might go into the market and buy for the purchaser, in which event the differential would not apply. Now, to connect this memorandum to the outside paper, with all this effect by the expansion of two words wholly insufficient for the purpose, and, from the structure of the printed contract, never so intended, seems to us to be clearly unwarranted.

The parties may conduct their business (and that is simply what this is) in such way as to use the differential as a schedule or means by which purchase or sale of sugar may be carried on, but when they wish to do so they must comply with the statute,—which is intended to avoid frauds and perjuries; there must be something in the contract of sale itself or the memorandum expressing the contract, which, by its own language, as interpreted by its trade meaning, leads inevitably and directly to the thing they wish to do, to wit, incorporate the differential in the memorandum of sale. It cannot be through the debatable ground of oral evidence which brings into play knowledge, and its extent, of the particular thing sold or delivered, as well as price. It cannot be done by use

of the term "basis 22.50," as used in these memoranda, even when considered in the light of the alleged custom.

In view of what has been said, we need not consider the other objections made to plaintiff's recovery under the statement of claim. The proposed custom limited the memorandum to one kind of sugar; the memorandum is not so limited. It applies to beet, cane or raw sugar. Here parol evidence supplies missing terms, for we cannot translate into ordinary language the so-called technical terms without at the same time implanting new terms in the contract, which alone will make it clear, and so circumscribe the effect of the contract as to practically rewrite it.

In Whitman & Co. v. Namquit Worsted Co., 206 Fed. 549, it is stated "that......with prices so given for particular species of the general description of yarn, the price for any other particular species of 3-grade white worsted yarn could be determined according to a scale of variation in price for different spins of yarn of the general description......The prices specifically named in the contract should be a sufficient basis for determining prices on other yarns, according to a system of variations understood by both parties." But here there is no system of variation or base price, understood by both parties, which of itself, or by any known schedule, or rule of variation, could give the prices to be affixed opposite the differentials named in the schedule. There was no relation of percentage basis or any other proportionate cost price, or rule that could supply the missing items.

The judgment of the court below is affirmed.