## Paw-Paw Co-Operative Association, Appellant, *v.* M. J. Sgarlatta.

*Sales—Acceptance—Memorandum in writing—Agency—Act of May 19, 1915, P. L. 543, Section 4.*

In an action of assumpsit to recover for a car-load of grapes sold and delivered the evidence established that defendant gave a verbal order for the grapes to the manager of the produce brokerage company which was accustomed to sell plaintiff's goods. It further appeared that the broker had asked defendant if he could use a car-load of grapes at a certain price, to which defendant replied that he would take them at that price. The brokerage company telegraphed plaintiff's agent to ship defendant the grapes at the price named and received a telegram from plaintiff's agent confirming the order. The brokers sent a memorandum of sale to plaintiff's agent signed as "seller" and a copy thereof to defendant signed as "broker."

Under such circumstances the brokerage company was not acting as agent for the defendant and there was not a sufficient memorandum in writing signed in behalf of defendant to meet the requirements of the fourth section of the Sales Act.

Where brokers deal on behalf of both seller and purchaser and undertake a joint mission it must appear and the memorandum must show they signed for the purchaser or the contract will not be binding.

Where there was evidence that the grapes were ordered subject to inspection; that upon their arrival defendant refused to inspect

them because of a dispute as to the siding upon which the car was to have been placed; and that after several days he did inspect and refused them, there was not an acceptance within the meaning of the fourth section of the Sales Act.

Argued April 19, 1927.   Appeal No. 143, April T., 1927, by plaintiff from judgment and decree of C. P. Cambria County, September T., 1925, No. 419, in the case of Paw-Paw Co-operative Association v. M. J. Sgarlatta.   Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Affirmed.

Assumpsit to recover purchase price of goods sold and delivered.   Before EVANS, P. J., McCANN, J., and REED, P. J. O. C. Specially Presiding.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $584.40.   Subsequently, on motion, the court entered judgment for defendant non obstante veredicto.   Plaintiff appealed.

*Error assigned* was judgment of the court.

*Ray Patton Smith* for appellant.—There was sufficient "Note or memorandum in writing of the contract or sale" to satisfy the requirements of the Sales Act.— Sorensen v. Quaker City Poster Advertising Company, 284 Pa. 209; Thatcher v. Pierce, 281 Pa. 16; Derrick v. Harwood Electric Company, 268 Pa. 136; Hill v. Marcus & Holtzman, 81 Pa. Superior Ct. 314; Swift & Company v. Meehan, 283 Pa. 429; Fredonia Seed Company v. Nathan & Brother, 83 Pa. Superior Ct. 374; Mosholder v. United Real Estate & Coal Company, 280 Pa. 517.

*Robert C. Hoerle* for appellee.—There was no acceptance of the goods.—Dolan Mercantile Company v. Marcus, 276 Pa. 404; Maguire v. James Lees & Sons

Co., 273 Pa. 85. There was not sufficient memorandum in writing of a contract to comply with the Sales Act.— Franklin Sugar Refining Company v. Kane Milling and Grocery Company, 278 Pa. 105; Dodd v. Stewart, 276 Pa. 225; Rasche & Co. v. Campbell, 276 Pa. 268.

OPINION BY CUNNINGHAM, J., July 8, 1927:

Appellant was plaintiff below in an action of assumpsit wherein it sought to enforce against defendant, the owner of a retail fruit business in the City of Johnstown, a contract for the sale of a carload of grapes, the entire contents of which defendant, upon inspection several days after the arrival of the car at Johnstown, refused to accept. The foundation of the contract was a verbal order and the value of the grapes was $533.62. The contents of the car were sold by the carrier and the proceeds applied to payment of freight and demurrage charges. No earnest had been given to bind the contract, nor had any partial payment been made. Plaintiff did not have any "note or memorandum in writing of the contract or sale" signed by the defendant or by her husband (who had active charge and management of the business); but its sales agent, the Wolverine Fruit and Produce Exchange of Grand Rapids, Mich., held and produced a telegram and a memorandum of sale from the Buley-Patterson Sales Company, incorporated for the purpose of engaging in the business of a merchandise broker in Johnstown and represented in these transactions by its General Manager, P. K. Branthoover, which telegran and memorandum plaintiff claimed were signed by Branthoover as defendant's "agent in that behalf." At the trial defendant did not offer any testimony but defended solely upon the alleged unenforceability of the contract under the provisions of the first paragraph of Section 4 of the Act of May 19, 1915, P. L. 543, relating to the sale of goods, which reads: "A contract to sell

or a sale of any goods or choses in action of the value
of five hundred dollars or upwards shall not be en-
forceable by action unless the buyer shall accept part
of the goods or choses in action so contracted to be
sold or sold, and actually receive the same, or give
something in earnest to bind the contract, or in part
payment, or unless some note or memorandum in writ-
ing of the contract or sale be signed by the party to
be charged or his agent in that behalf."

At the conclusion of plaintiff's testimony the
learned trial judge directed a verdict in favor of the
plaintiff but subsequently joined with the members
of the Court of Common Pleas of Cambria County,
sitting in banc, in granting defendant's motion, based
upon her point for binding instructions, for judgment
in her favor non obstante, and plaintiff thereupon
took this appeal, assigning this action of the court
below for error. The pivotal point in the case there-
fore is whether the broker, under all the circumstances
disclosed by the evidence, acted as agent for the de-
fendant. Plaintiff sought to enforce the contract on
the theory that the broker "was in fact acting as the
agent of the defendant" and that the telegram and
memoranda of the transaction signed by Branthoover
amounted to a sufficient "note or memorandum in
writing of the contract or sale" signed by the "agent
in that behalf" of "the party to be charged" to take
this case out of the operation of that section of the
Sales Act to which we have referred. Incidentally,
the plaintiff also contended that defendant received
the grapes "for inspection" and that this amounted
to an "acceptance" within the meaning of the act.
All that the testimony discloses upon this point is
that the grapes were sold subject to inspection and
were delivered to a common carrier consigned under
a straight bill of lading to plaintiff's sales agent,
Wolverine Fruit and Produce Exchange, at Johns-

town, with directions to advise defendant; that there was some controversy over the particular siding upon which the car was to be placed, which seems to have lasted about five days; and that defendant, after examination, refused it in a written notice to the carrier's agent "account grapes frosted and baskets leaking." We agree with the court below that there was no evidence of an acceptance within the meaning of the fourth section of the Sales Act. (See Dolan Mercantile Co., App., v. Marcus, et al., 276 Pa. 404.)

This brings us to the real question in the case: for whom was the broker acting—the seller or the buyer, or both,—and, if in the latter capacity, did he sign the telegram and sales memoranda for the buyer? The learned counsel for plaintiff cites and relies upon the case of Hill v. Marcus and Holtzman, App., 81 Pa. Superior Ct. 314, decided by this court on July 12, 1923. That case (as well as Paturzo, et al., v. Ferguson, 280 Pa. 379, and Fredonia Seed Company v. Nathan and Brother, 83 Pa. Superior Ct. 374) is authority for the proposition that the telegram and sales memorandum, sent and given to the seller and admitted in evidence in the case at bar, related as they are, would, taken together, amount to a sufficient "note or memorandum in writing of the contract or sale" to satisfy the requirements of the Sales Act, provided the broker in signing them acted as the buyer's agent. The question with respect to the capacity in which the broker acted under the facts in the present case is therefore the important inquiry. In a number of its features the facts here are similar to those in Hill v. Marcus and Holtzman, App., supra, but there are also a number of circumstances disclosed by the testimony in this case which require careful examination for the purpose of determining whether it is ruled by Hill v. Marcus and Holtzman, supra, or rather by Franklin Sugar Refining Co., App., v. Kane Milling and

Grocery Company, 278 Pa. 105, (in which the opinion of the Supreme Court was filed a few days after the opinion of this court in the Hill case) and by Franklin Sugar Refining Co. v. Howell, App., 274 Pa. 190, in both of which last mentioned cases it was contended that the broker was authorized by each party, with the knowledge of the other, to make the contracts there involved for the purchase of sugar as the agent of the respective parties thereto. In Hill v. Marcus and Holtzman, supra, this court affirmed the court below in holding that the broker under the facts in that case acted as the agent of the buyers, the defendants in the action. The broker there was a produce brokerage company in the City of Pittsburgh and was not in the regular employ of either party. By reason of a previous transaction with other parties it knew the market price of eggs and one of its representatives approached the defendants and inquired whether they wanted a car of eggs at a stated price. The broker had not been authorized or instructed by the plaintiff to offer the eggs for sale and there was no evidence that the plaintiff had at that time a car of eggs for sale. The defendants told the broker's representative that they would take a car if he could get them at the price named. Thereupon the brokerage company telegraphed plaintiff to ship defendants a car at the price named and received a telegram the same day from the plaintiff confirming the order. The brokerage company then telephoned defendants that the order had been accepted and telegraphed plaintiff confirming the sale. Plaintiff then bought the eggs from a dealer in Tennessee and ordered them shipped to Pittsburgh, attaching the bill of lading to a sight draft on defendants and forwarding both through his bank at Pittsburgh. Plaintiff also sent defendants an invoice of the sale and notified the brokerage company to be on the lookout for the car. Upon arrival at Pittsburgh the shipment was refused by the defend-

ants and the eggs sold at a loss. Judge KELLER, in writing the opinion for this court, distinguished the case from Dodd, et al., App., v. Stewart, 276 Pa. 225, in which the sellers employed the brokers to find a purchaser and from Rasche and Company, App., v. Campbell, 276 Pa. 268, where no authority was given by the alleged buyer to the brokers to make the purchase for him, and held that the finding of the court below, to the effect that the broker was the buyer's agent, was supported by the evidence. An examination of the evidence in the case at bar discloses that in several important features the facts here differ materially from those present in the Hill case.

One of the material distinctions is that the plaintiff was a fruit grower and had grapes for sale, and we think it is a fair inference from the testimony that the broker was authorized by plaintiff to secure buyers for its commodity; but it does not necessarily follow from these facts alone, nor from the additional fact that plaintiff through its immediate sales agent, the Wolverine Fruit and Produce Exchange, paid the broker its commission, that the broker may not have also acted for the defendant. The manager of plaintiff testified that the Wolverine Fruit and Produce Exchange was a large concern organized to handle the sales of local organizations in the Michigan fruit belt and that it was the agent of plaintiff to handle its sales upon a flat commission for each car sold. The method of doing business as outlined by this witness seems to have been that, when the fruit was ready for market, the Wolverine Fruit and Produce Exchange would circularize its trade, including the Buley-Patterson Company, by wire and bulletin, usually quoting prices. The Buley-Patterson Company had sold grapes before for plaintiff as its broker and the telegram from it, as interpreted by the witness, indicated that the Buley-Patterson Company had been notified,

through the Wolverine Exchange, that plaintiff had grapes for sale. Referring to the telegram, hereinafter quoted, and concluding his testimony this witness said: "It was an offer from the Buley-Patterson Company to the Wolverine Fruit & Produce Exchange and then the Wolverine Fruit & Produce Exchange tendered us the offer and if we can fill we accept and through that medium it went through."

When recalled Branthoover testified that his company sold as brokers for at least one hundred different concerns, including the Wolverine Exchange, and had been selling grapes for the Wolverine Exchange for some time. He also stated that it sold for its local customers; that the defendant might have a car of something sometime and they would sell it for him. With this understanding of the relations between the seller and the broker and directing our attention to the circumstances of this particular transaction, we find that Branthoover testified that he had an interview with defendant's husband relative to the purchase of grapes and continued as follows: "Q. In what capacity were you dealing with him? A. In my usual capacity as a broker. Q. What business did you have with him? A. Well, I don't recall whether there were any other items purchased by him on that particular day but on that particular day he asked me what grapes were, whether he could get some grapes and in the course of our conversation he made an offer, or I made an offer, subject to the shipper's approval, and he said, 'If you can get a car of grapes at that figure, try and get it.' Q. What was that figure? A. Fifty dollars a ton."

On cross examination his testimony with respect to the inception of this transaction was as follows: "Q. Your proposition to him was to sell him a car of grapes? A. Not for me to sell them because I did not own any grapes. I could not sell them to him.

Q. You were trying to make sale of grapes to him? A. Yes. Q. You were the broker and when you walked into this place to sell you asked them if they wanted grapes or flour or whatever it is you are handling and the conversation that day merely related to him buying a car of grapes from you? A. There may have been some other things at the time." He also testified that the grapes "were sold for the account of the Wolverine Fruit and Produce Exchange" and that he was "to be paid a commission from them for making the sale." Immediately after the conversation with Angelo Sgarlatta, Branthoover sent the following telegram: "Johnstown, Pa., Oct. 27th, 1924. Wolverine Fruit and Produce Exchange, Grand Rapids, Mich. Ship Wilner Sgarlatta car each Bando slightly Frosted Subject Inspection Fifty Quote Potatoes. [Signed] Buley-Patterson Sales Company," in answer to which the following telegram was received by the broker on the same date: "Oct. 27, 1924. Buley-Patterson Sales Co., Johnstown, Pa. Replying confirm Wilner Sgarlatta car each quote potatoes dollar seventy sack delivered. [Signed] Wolverine Fruit & Produce Exchange."

Under the method of doing business adopted by the Buley-Patterson Sales Company, three forms of sales memoranda seem to have been used. We gather from the testimony that these are printed forms with appropriate blanks to be filled in with typewriting. The forms differ in accordance with the purposes for which they are intended and are printed upon paper of different colors. The typewritten words and figures seem to be the same on each form used in this case. The first form is intended for, and was sent by Branthoover to, the seller. The second form was handed to the buyer and the third retained by the broker. We are here concerned with the memorandum of this sale sent to the sales agent of the plaintiff and with the memorandum handed to the buyer. Both relate to "1 Car

Jumbo Concord Grapes (slightly frosted) ...... $50 per ton" to be shipped to M. Sgarlatta by the B. & O. Railroad to Johnstown, Pa., subject to inspection before acceptance. Both are issued by Buley-Patterson Sales Company "acting as brokers" and in confirmation of "wire," and it is stated in each that the sale is made "for account of Wolverine Fruit & Pro. Co." On the memorandum delivered to the seller the following appears: "Please confirm promptly. Send copy of invoice to Buley-Patterson Sales Company. [Signed] Buley-Patterson Sales Company, Per PKB," under the title "Seller." On the memorandum delivered to the buyer there appears, in lieu of above quoted notices, merely the phrase "Thank You" and this memorandum is signed "Buley-Patterson Sales Company, per P.K.B.," under the title "Broker."

From this recital of facts it is apparent that the case at bar is quite similar to the Franklin Sugar Refining Company cases above cited. In both of these cases J. H. Huston Co., Inc., was the broker concerned. In the first case (Franklin Sugar Ref. Co. v. Howell, App., 274 Pa. 190) the Supreme Court stated the facts with respect to this part of the case as follows: "The plaintiff is a refiner of sugar and sold its product through certain brokers, one of whom was J. H. Huston Co., Incorporated, to whom it gave authority to enter into contracts, when advised by plaintiff it had sugar for sale; and to whom it paid commissions for effecting the sales. The broker had customers of its own, to whom it offered the sugar when so advised; defendant was one of these. If the offer was accepted, the broker executed a sales memorandum and sent a copy thereof to the buyer, another to the seller, and kept one itself. Ordinarily in this phase of the transaction, it was acting for both parties." In the other case (Franklin Sugar Ref. Co., App., v. Kane Milling and Grocery Co., 278 Pa. 105) it was averred in the state-

ment that the Huston Company was duly authorized by the defendant, with the knowledge of plaintiff, to make on behalf of defendant the contract there sued upon and was duly authorized by plaintiff, with the knowledge of defendant, to make the contract on behalf of plaintiff, and, pursuant to such authority, made and executed on behalf of plaintiff and defendant certain sales memoranda evidencing the terms of the contract. Our Supreme Court then stated that an examination of these sales memoranda showed that they were only signed "Sold by J. H. Huston Co., Inc.," and that this indicated, so far as the writings were concerned, that the broker was the seller or represented someone as seller. It was further stated that neither the buyer nor anyone for it signed any of the memoranda on which the plaintiff relied for recovery and that "The fact that the broker signed for plaintiff vendor only is consistent with the papers themselves, and with no other conclusion." Here it is equally true that the memoranda relied upon are signed only by the broker and that on the copy given the seller the brokerage company signed as "seller" and on the copy given the buyer it signed as "broker," and on both it is plainly stated that the company issuing them is "acting as brokers" and that the grapes are "Sold for account of Wolverine Fruit and Produce Co." In the course of the opinion of the Supreme Court in the case last cited the following appears: "Where brokers deal on behalf of both seller and purchaser, and undertake a joint mission, it must appear, in this class of cases, and the memoranda must show they signed for the purchaser, or the contracts will not be binding," and it was held in that case that the contracts there under consideration were fatally defective and could not be enforced. A majority of the members of this court are of opinion that this case, under its facts, falls within the class of cases of which the

Franklin Sugar Refining Company cases are illustrations and that—giving the plaintiff the benefit of every fair inference which can be drawn from the evidence—it cannot properly be concluded that the broker signed the telegram and sales memorandum, upon which plaintiff bases its case, as agent for the defendant. It follows that the contract sued upon is unenforceable under the Sales Act and the defendant is entitled to judgment upon the whole record. We have not overlooked the untenable contention of counsel for plaintiff that the portions of the affidavit of defense admitted in evidence at the trial contained admissions sufficient to satisfy the requirements of the Sales Act. The position of defendant, as disclosed by her affidavit of defense, may be thus summarized: She admitted that through her husband she verbally ordered from Branthoover a carload of slightly frosted grapes at the specified price but averred that in the transaction Branthoover "acted as agent for the Buley-Patterson Sales Company and was not in any regard either agent, broker or attorney" for her. In view of the averments of this affidavit of defense the case of Mosholder v. United Real Estate and Coal Company, App., 280 Pa. 517, cited on behalf of plaintiff, is not applicable.

The assignments of error are dismissed and the judgment is affirmed.