**TATE et al. v. SHOBER.**

Civil Action No. 1373.

District Court, E. D. Pennsylvania.

Oct. 22, 1941.

See, also, D.C., 1 F.R.D. 632.

Shields, Clark, Brown & McCown, of Philadelphia, Pa., for plaintiffs.

Herman H. Krekstein, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This case is before the court on defendant's motion to dismiss the amended complaint.

In substance, the amended complaint avers:

Continental Collieries, Incorporated, one of the plaintiffs, in 1938 entered into five written contracts with five owners or lessees of coal mines for the exclusive agency in the sale of coal produced by these mines (Paragraph 2, Amended Complaint).

Contemporaneously, the plaintiff Continental assigned to the plaintiff Wattles a one-half interest in these agency contracts in consideration of his services in their negotiation (Paragraph 3, Amended Complaint). The plaintiff Tate is the president of Continental.

On or about January 4, 1939, the defendant Shober "orally agreed" to purchase the interest of the plaintiff Continental in the aforementioned sales agency contracts for $5,000 (Paragraph 4, Amended Complaint).

Subsequently, on January 13, 1939, the plaintiff Wattles—as "defendant's agent duly authorized"—sent a letter to Tate as president of Continental, which letter enclosed a draft of an assignment of the sales agency contracts (Paragraph 6, Amended Complaint).

The letter of January 13, 1939 (Exhibit "B" to the Amended Complaint), follows:

"I am attaching hereto contract reciting agreement between Samuel L. Shober, Jr., yourself, myself and Continental Collieries, Inc.

"If you will execute the original and one copy and return with the original sales contracts attached, Mr. Shober will issue his check in your favor for $5,000. upon receipt of which I will turn over to him the executed papers and contracts and simultaneously mail you Mr. Shober's check."

The assignment of the agency contracts, referred to in the letter of January 13, 1939 (Exhibit "D" to the Amended Complaint), read as follows:

"Know All Men by These Presents That we, Ben E. Tate, of Cincinnati, Ohio, Frederick M. Wattles, of New York City, and Continental Collieries, Incorporated, a Delaware Corporation, for and in consideration of the sum of Five Thousand Dollars, receipt whereof is hereby acknowledged, hereby sell, assign, transfer and set over unto Samuel L. Shober, Jr., of Philadelphia, Pennsylvania, his heirs, executors, administrators, and assigns, all our and each of our right, title and interest in and to the following exclusive sales agency contracts wherein we are the exclusive sales agents for the sale of coal produced by the below named coal companies:

"Contract with Tioga Mining Co., entered into the 10th day of March, 1938.

"Contract with Edyth Coal Co., entered into the 6th day of April, 1938.

"Contract with Lundquist Coal Co., entered into the 13th day of September, 1938.

"Contract with Wyoming Valley Engineering Co. Inc., entered into the 6th day of October, 1938.

"Contract with Patrick B. Brown, Harold Weikel and Willard O. Wolfe, co-partners trading as Antrim Coal Co., dated August 30, 1938.

"And we and each of us do hereby remise, release and forever discharge Tioga Mining Co., Edyth Coal Co., Patrick B. Brown, Harold Weikel, and Willard O. Wolfe, co-partners trading as Antrim Coal Co., Wyoming Valley Engineering Co., Inc., and Lundquist Coal Co. of and from all claims and demands of every nature and character to the date of these presents.

"Dated this 16th day of January, A. D. 1939.

"Ben E. Tate                      (Seal)
"Frederick M. Wattles      (Seal)
"Continental Collieries, Incorporated
"By: Ben E. Tate,
                            "President"
"Attest:
"C. W. Henry
"Secretary
"(Corporate Seal)"

Pursuant to the letter of January 13, 1939, the plaintiff Continental—by its president, plaintiff Tate— returned to plaintiff Wattles the assignment of the sales agency contracts, together with the original sales agency contracts assigned, with a letter dated January 16, 1939 (Exhibit "C" to the Amended Complaint), which read as follows:

"I have your letter of January 13 attaching in triplicate a contract between yourself, Continental Collieries and Ben E. Tate. We have executed this contract and attach two copies. Attached you will find the original contracts with the mining companies outlined in the contract described above.

"As discussed, *you will act as trustee* in handling the closing of this contract as you have described in the last paragraph of your letter of January 13, and send us Mr. Shober's check for $5,000.00 upon delivery of this contract to him."

(Emphasis supplied.)

The motion to dismiss the amended complaint is premised on the defendant's contention that the complaint fails to disclose a cause of action in that the consideration involved in the assignment of the agency contracts was $5,000 and that the Statute of Frauds section of the Pennsylvania Sales Act of May 19, 1915, P.L. 543, section 4, as amended by the Act of April 27, 1925, P. L. 310, section 2, 69 P.S.Pa. § 42, provides that where the consideration in such a transaction is $500 or upwards, the contract must be in writing, or else it is unenforceable.

The relevant provisions of section 42, 69 P.S.Pa., of the Pennsylvania Sales Act, read as follows:

"§ 42. Statute of frauds; application of; acceptance of goods

"First. A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

* * *

"Third. There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, or any part thereof, expresses by words or conduct his assent to becoming the owner of those specific goods. (1915, May 19, P.L. 543, § 4; 1925, April 27, P.L. 310, No. 174, § 2.)."

The motion to dismiss thus presents this issue:

Is the plaintiff Wattles's letter of January 13, 1939, a "note or memorandum in writing of the contract or sale · * * * signed by the * * * agent" of the party sought to be charged (the defendant) as required by the Statute of Frauds section of the Pennsylvania Sales Act?

■ Under the Pennsylvania decisions a principal can be held liable on a contract, required to be in writing by the Statute of Frauds, if an agent signs the necessary memorandum as agent, and this appears to be so even if the principal is not named as such in the writing or memorandum: Penn Discount Corp. v. Sharp, 125 Pa.Super. 171, 189 A. 749.

However, in the present case the alleged agent (plaintiff Wattles) appears to have been the owner of a one-half interest in the very choses in action which are the subject matter of the memorandum allegedly signed by the plaintiff Wattles as agent for defendant.

■ It appears to be a well settled rule that one who is a party to a contract of sale, either of land or goods, is not to be regarded as the agent of the other party to the contract for the purpose of binding him by a memorandum under the Statute of Frauds, Reckord Mfg. Co. v. Massey, 151 Md. 348, 133 A. 836, 47 A.L.R. 201. See Happ Bros. Co. v. Hunter Mfg. & Commission Co., 145 Ga. 836, 90 S.E. 61; Eugene L. Lezinsky Co. v. Hoffman, 111 Misc. 415, 181 N.Y.S. 732, affirmed on opinion below in 194 App.Div. 954, 185 N.Y.S. 937.

In Happ Bros. Co. v. Hunter Mfg. & Commission Co., supra, the court said in a syllabus: "Where a contract for the sale and purchase of goods was such as to be within the statute of frauds, the seller could not act as the agent of the buyer in making and signing a memorandum so as to meet the requirement of the statute and bind the buyer. * * * In this case, although there was evidence indicating that the plaintiff corporation may have been a broker, in the transaction under consideration, it was acting for itself as a principal and not as a broker, and the suit is in its name as a principal contracting party. Consequently the question of a broker acting for both parties for certain purposes does not arise."

The reason for the rule prohibiting a party to a contract of sale acting as agent for the purchaser was well stated in Bent v. Cobb, 1857, 9 Gray, Mass., 397, 69 Am.Dec. 295. In holding that a guardian, acting as auctioneer, could not bind the purchaser, the court said: "The great mischief intended to be prevented by the statute would still exist, if one party to a contract could make a memorandum of it which would absolutely bind the other. If such were its true construction, it would be a feeble security against fraud; or rather it would open a door for its easy commission. A vendor could fasten his own terms on his vendee. If it was a written contract binding on the purchaser, he could not show by parol evidence that the terms of the bargain were incorrectly or imperfectly stated. He could not vary or alter it by the testimony of those present at the sale. The publicity of a sale

by auction would be no safeguard against a false statement of the terms of sale, made in the written memorandum signed by a party acting in the double capacity of auctioneer and vendor. The chief reason in support of the rule that an auctioneer, acting solely as such, may be the agent of both parties to bind them by his memorandum, is that he is supposed to be a disinterested person, having no motive to misstate the bargain, and entitled equally to the confidence of both parties. But this reason fails when he is the party to the contract and the party in interest also. The purpose of the statute was, that a contract should not be binding unless it was in writing and signed by the party himself to be charged thereby, or by some third person in his behalf, not a party to the contract, who might impartially note its contents. Nor can it make any difference as to the power of the vendor to make a memorandum binding on the vendee, that the sale is made by the former in a representative or fiduciary character as an executor, administrator, guardian or trustee. He is still the party to the contract, the price is to be paid to him, he is to deal with the purchase money; his interest and bias would naturally be in favor of those whom he represented, and, what is more material, in case of dispute or doubt as to the terms of contract, his duties and interests would be adverse to those of the vendee. He would stand in a relation which would necessarily disqualify him from acting as agent of both parties."

Certainly, if this were not the law, the Statute of Frauds would be deprived of its meaning and reduced to an absurdity.

Now, if the alleged agent is the part owner of the choses which are the subject of the written contract, it must follow that the agreement would be unenforceable as to that portion of the chose which the agent owned. Since the contract in the case at bar appears to be indivisible, it would follow that the entire contract would be unenforceable, if the alleged agent owned any portion of the subject matter.

The plaintiffs apparently seek to avoid the consequences of this conclusion by the following averment: "10. Plaintiffs aver that plaintiffs Ben E. Tate and Frederick M. Wattles are not real parties in interest in this proceeding and have no interest in said sum of $5,000, the subject of this suit, but have joined as plaintiffs herein only because their individual signatures were added

to said assignment of said sales agency contracts at defendant's request."

However, this paragraph does not overcome the previous averment in Paragraph 3 and Exhibit "D" which establishes that at the time the letters of January 13, 1939, and January 16, 1939, were exchanged, plaintiff Wattles had *an interest* in the assignment which was the subject of the letters. As already mentioned, Paragraph 3 avers that the plaintiff Continental had prior to January 13, 1939, assigned to plaintiff Wattles a one-half interest in the sales agency contracts, and in the assignment (Exhibit "D") dated January 16, 1939, by which the choses were proposed to be transferred, plaintiff Wattles is named as one of the parties who do thereby "sell, assign, transfer and set over" to defendant Shober their "right, title and interest in" the sales agency contracts; and this assignment is signed inter alia by the plaintiff Wattles, the alleged agent.

■ It is the Pennsylvania rule also that where a broker deals on behalf of both seller and purchaser, and undertakes a joint mission, it must appear, and the memorandum must show he signed for the purchaser or the contract will not be binding: Franklin Sugar Refining Co. v. Kane Milling & Grocery Co., 278 Pa. 105, 122 A. 231, 29 A. L.R. 1213.

■ Applying the rules stated to the "memorandum" in the *instant case, it is* evident that the "memorandum" is insufficient to meet the requirements of the Pennsylvania Statute of Frauds.

■ The averments in *the amended statement* of claim that the plaintiff Wattles is merely a use plaintiff cannot be accepted in face of the writing (the assignment—Exhibit "D") which describes him as a partial owner of "right, title and interest" in the sales agency contracts.

As was stated in Germantown Trust Co. v. Emhardt, 321 Pa. 561, 565, 184 A. 457, 459: "It is firmly settled that 'where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be * * * the only evidence of their agreement.' Martin v. Berens, 67 Pa. 459, 463. As Mr. Justice Schaffer said in Gianni v. [R.] Russell & Co., 281 Pa. 320, 323, 126 A. 791, 792, quoting from Union Storage Co. v. Speck, 194 Pa. 126, 133, 45 A. 48: ' "All prelimi-

nary negotiations * * * are merged in and superseded by the subsequent written contract * * * and 'unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.' " ' The present Chief Justice, in Speier v. Michelson [303 Pa. 66, 154 A. 127], after a review of the authorities, stated the modern rule to be: 'Any parol agreement that subjects the obligation on the instrument to any condition or contingency, whether in person, time, or amount, is ineffective, and the instrument is unconditional, unless fraud, accident, or mistake, was the means through which the instrument was procured.' "

See also, Pennsylvania Company, etc., v. Lebanon B. & L. Ass'n, 337 Pa. 316, 319, 10 A.2d 418.

■ As to the averment in the plaintiffs' amended complaint: "9. Plaintiffs aver, on information and belief, that the defendant, through said Antrim Coal Company, has sold and is now selling the product of one or more of the mines referred to in said assignment, Exhibit 'D' hereto, and that defendant has accepted and retained the benefits of one or more of said sales agency contracts thereby."

This averment does not show compliance with the Statute of Frauds. The choses in action, which were the subject of the contract, were obviously not delivered to or accepted by the defendant, in whole or in part. Plaintiff Continental's letter of January 16, 1939, makes it perfectly clear that it did not want the choses in action delivered unless and until defendant Shober paid $5,-000 to plaintiff Wattles. The alleged fact that defendant Shober sold the coal, which was the product of "one or more of the mines referred to" in the assignment is completely irrelevant. Coal was not the subject matter of the contract; its sale or delivery is of no moment.

It is significant that there was no averment that there was a delivery to the defendant of the assignment (Exhibit "D") or of the assigned sales agency contracts, or that the defendant was acting as sales agent for any of the coal companies under the assignment or the assigned sales agency contracts.

For the reasons stated, the motion to dismiss must be and is granted. The amended complaint itself clearly and indisputably discloses that there is no cause of action.