### SCHENLEY DISTILLERS CORPORATION v. KINSEY DISTILLING CORPORATION.

#### No. 1765.

District Court, E. D. Pennsylvania.

Dec. 31, 1941.

680

William E. Mikell, Jr. (of Saul, Ewing, Remick & Harrison), of Philadelphia, Pa., for plaintiff.

Earl Jay Gratz and J. Maurice Gray, both of Philadelphia, Pa., for defendant.

BARD, District Judge.

The following facts are recited in the complaint filed in this action: Plaintiff is the holder of negotiable warehouse receipts for 18,632 barrels of whiskey stored in a bonded warehouse. The receipts were issued by the Kinsey Distilling Company and each states that the whiskey will be delivered to the holder of the receipt upon payment of taxes and storage charges and the surrender of the receipt properly endorsed. The stated storage charge is ten cents per month per barrel, and no other charges are set forth in the receipts. Plaintiff purchased these receipts on July 25, 1941, prior to which time the Kinsey Distilling Company had filed a petition for reorganization in this court under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., and the operation of the warehouse had been continued by its trustees. On July 31, 1941, pursuant to authorization of Judge Kalodner of this district, the trustees of the Kinsey Distilling Company conveyed the warehouse to the Kinsey Distilling Corporation, the present defendant, which immediately commenced to operate it. Defendant notified the plaintiff on that day that storage charges thereafter would be at the rate of fifteen cents a month per barrel and that defendant would make in addition a handling charge of one dollar per barrel for the delivery of the whiskey. Plaintiff promptly protested, and on August 6, 1941, notified defendant that it wished to remove the whiskey. To this and to subsequent demands, accompanied by a tender of storage

charges at the rate of ten cents per month per barrel, defendant refused to accede unless plaintiff paid in addition the dollar per barrel handling charge and the increased storage charges, for both of which it asserted a lien upon the whiskey. Plaintiff then sought to have the whiskey removed by its own employees, but defendant likewise refused such permission. The principal prayer of the complaint is that defendant be ordered to surrender and deliver the whiskey to plaintiff.

The answer does not deny plaintiff's title to the whiskey, but asserts that defendant is not bound by the terms of warehouse receipts issued by the bankrupt, and that defendant is entitled to a warehouseman's lien for storage and handling charges fixed by it when it began to operate the warehouse. The answer further sets forth that the decree of Judge Kalodner authorizing the sale of the warehouse and other assets of the bankrupt provided that the purchaser should acquire these assets free and clear of all claims and liens against the estate of the bankrupt. It alleges that the charges of fifteen cents per barrel for storage and one dollar per barrel for handling are the fair and reasonable market value for such services, and it recites the steps which are required to transfer the whiskey from the warehouse to the platform and which it claims warrant the imposition of such a handling charge. It further states that "a charge of this character is made customarily and generally, and has been for many years, in the warehousing industry throughout the country * * * for such and similar services", and that both the bankrupt and the trustees in bankruptcy had imposed and collected handling charges at this warehouse. It also asserts that defendant could not "properly" permit plaintiff's employees to handle the goods in the bonded warehouse because this would necessarily entail their handling the goods of others.

After defendant had filed its answer, it filed a motion to dismiss the complaint on the ground that the complaint failed to state a claim upon which relief could be granted. Plaintiff filed a motion for judgment on the pleadings.

The plaintiff had previously filed a motion on September 26, 1941, asking that upon payment into court of a certain sum of money, the court enter an interlocutory order releasing the whiskey to the plaintiff. On October 22, 1941, pending the determination of the other motions, the court entered an order: (1) directing the plaintiff to pay to the defendant the sum of $1,863.-20, which represents storage at the rate of ten cents per barrel for the month of August 1941 (all previous storage charges having been paid), this payment to be without prejudice to the rights of either of the parties in connection with the issues involved in this litigation; and (2) directing the plaintiff to deposit with the court the sum of $35,000 to secure the payment to the defendant of those charges to which it might ultimately be found in this action to be entitled and directing the defendant thereupon to surrender and deliver the whiskey to the plaintiff for removal. The parties have complied with this order.

Considering first the defendant's motion to dismiss, it should be noted that it was not filed prior to the defendant's answer as is required by Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Nor did the defendant follow the alternative practice of including in its answer a separate defense attacking the sufficiency of the cause of action set forth in the complaint and then calling this up for argument by application under Rule 12(d). This failure to follow the prescribed procedure has resulted in some confusion because defendant in its argument in support of its motion often referred to facts set forth in its answer which are before me only with respect to plaintiff's motion for judgment.

■ The principal argument of the defendant against plaintiff's right to relief on the basis of the allegations of the complaint is that a warehouseman who has not himself issued warehouse receipts for goods which are stored in a warehouse the operation of which he has taken over, is legally entitled to a lien for whatever storage and handling charges he chooses to claim, and that the owner's sole recourse is to pay these charges and to sue to recover back the amount by which such charges exceed "reasonable" charges for these services. In other words, defendant's contention is that it is entitled to assert a lien for the amount it chooses to charge, no matter whether arbitrary or prohibitive, and plaintiff cannot obtain its goods unless it pay these charges and then be relegated to a separate law-suit to attempt to recover so much of these charges as it can prove was unreasonable. Such contention cannot be sustained.

682

A more difficult problem is presented by plaintiff's motion for judgment on the pleadings. Defendant does not question plaintiff's title to the whiskey, but contends that it can in no way be bound by the terms of warehouse receipts not issued by it, but by a corporation, now bankrupt, which was operating the warehouse at the time that the whiskey was deposited for storage.

██ Much reliance in support of this contention has been placed by the defendant on the decree of the court in the bankruptcy proceedings authorizing the sale of the warehouse and other assets of the bankrupt to the defendant free and clear of claims and liens against those assets. I am, however, unable to see how that decree has any bearing whatsoever on the issues of this case. Title to the whiskey was never claimed by the bankrupt and the assets sold pursuant to the decree of this court in the bankruptcy proceedings did not include the whiskey. Plaintiff is not seeking in this action to enforce a claim against any of the assets sold by the trustee to the defendant, but does seek to compel delivery of its whiskey pursuant to the terms of the warehouse receipts issued therefor.

The basic question of the case, therefore, is whether the purchaser of a warehouse containing goods deposited for storage under an agreement requiring the delivery on the payment of specified charges, can require as a prerequisite to the delivery of the goods, the payment of charges in excess of those agreed upon.

██ I am of the opinion that this question must be answered in the negative, and that plaintiff is entitled to the relief which it seeks. It is quite true, as the defendant argues, that when the operator of the warehouse became bankrupt and the defendant purchased the warehouse from the trustees in bankruptcy, defendant was under no obligation to continue to operate the building as a warehouse, but could have demolished it or converted it to any other use. It is likewise true that defendant could not be required to continue storage of the goods pursuant to the terms of a contract of the bankrupt to which it was not a party. But if the defendant had elected to demolish the warehouse or convert the building to some other use, it would have been obliged to surrender possession of the goods stored therein to the owners and afford them a reasonable opportunity to remove those goods. It gained no greater rights by its election to continue to operate the building

as a warehouse, and it would be most inequitable to permit it to impose new terms on the owners of the goods stored therein without offering to surrender possession of the goods to such owners if they did not wish to accept such terms. If defendant is not to be bound by the terms of a contract of storage to which it never agreed, plaintiff cannot be bound by the terms of a contract of storage to which it never agreed. Defendant purchased a warehouse in which the goods of another were stored, and it cannot complain if the owner refuses to accede to the charges it fixes, nor can it hold the goods of the owner for the payment of such charges. At most, it can surrender possession of the goods and require the owner to remove them within a reasonable time if he is unwilling to pay such charges.

Defendant's position is especially without merit where, as in the case at bar, the owner offered to remove the whiskey from its place in the warehouse by its own employees in preference to payment of one dollar per barrel handling charge demanded by the defendant. If defendant found it inconvenient or difficult to permit plaintiff to remove its goods, it should be noted that the situation was one of its own making. Defendant purchased the warehouse with full knowledge that the goods of third persons were stored therein, and it should have anticipated that the owners might refuse to pay the storage charges it required and that in that event it would be obliged to surrender possession of the goods. Defendant is not being required to perform contractual obligations it did not undertake. It is merely being denied any right to retain possession of plaintiff's goods in order to require the plaintiff to perform contractual obligations it did not undertake.

While there is no authority directly in point on this question, the case of German National Bank v. Meadowcroft, 95 Ill. 124, 35 Am.Rep. 137, lends strong support for the conclusion I have reached. In that case the action was in trover against the purchaser of a warehouse for failure to deliver grain upon presentation of warehouse receipts issued by the vendor of the warehouse. In holding that plaintiff was entitled to recover, the Illinois court stated at page 132 of 95 Ill., 35 Am.Rep. 137: "It is true that this grain was delivered to Runyan and the demand was made of Stokes. But Runyan was compelled to sell the warehouse to pay indebtedness to the bank. He conveyed to Schaffner to hold in trust for

the bank, and was compelled to deliver possession to the purchaser. And as he was not permitted to remove the grain he had received into the warehouse, except under circumstances not claimed to have existed, without committing a felony, he had no choice, but was compelled to surrender the possession of the grain with the elevator. Nor did Stokes, the bank or any other person acquire any title, claim or lien on the grain then in the warehouse, the possession of which was delivered with it. But they, by receiving it, became as mere substituted bailees in the place of Runyan, and became charged with the same duties to the owners, and were bound to deliver it precisely as would Runyan had he been in possession."

■ Defendant has cited no case which supports its contentions, but it relies upon Section 27 of the Pennsylvania Warehousemen's Receipts Act of March 11, 1909, P. L. 19, 6 P.S.Pa. § 23, which reads as follows: "Subject to the provisions of section thirty, a warehousman shall have a lien on goods deposited, or on the proceeds thereof in his hands, for all lawful charges for storage and preservation of the goods; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering, and other charges and expenses in relation to such goods; also for all reasonable charges and expenses for notice and advertisements of sale, and for sale of the goods where default has been made in satisfying the warehouseman's lien."

In my view of this case, defendant has no "lawful charges" or "lawful claims" against plaintiff which would entitle it to a lien under this section. Plaintiff has paid all the charges required of it by the contract of storage under which the whiskey was deposited, and it promptly refused to continue its storage of the whiskey in defendant's warehouse when the defendant advised it of the charges it would impose therefor.

Moreover, it is my opinion that the provisions of Section 30 of the Pennsylvania Warehousemen's Receipts Act, 6 P.S.Pa. § 26, to which the provisions of § 27 of the Act are expressly subject, are applicable in the present case, and prevent the defendant from asserting a lien for charges other than those enumerated in the outstanding warehouse receipts. Section 30 provides: "If a negotiable receipt is issued for goods, the warehouseman shall have no lien thereon, except for storage of those goods subsequent to the date of the receipt, unless the receipt expressly enumerates other charges for which a lien is claimed. In such case there shall be a lien for the charges enumerated, so far as they are within the terms of section twenty-seven, although the amount of the charges so enumerated is not stated in the receipt."

■ It will be noted that the applicability of Section 30 is not restricted to the case of a warehouseman who has himself issued warehouse receipts, and the policy of facilitating commercial transactions by protecting the holders of negotiable instruments certainly supports a construction of the Warehousemen's Receipts Act by which charges for the delivery of the goods would be fixed by an outstanding negotiable warehouse receipt, no matter who originally issued it. Accordingly, since the warehouse receipts in the case at bar fixed the charges which had to be paid in order to entitle the holder to the delivery of the whiskey, the lien of the defendant is limited by Section 30 of the act to those charges, and is not entitled to hold the goods for the additional charges it seeks to impose upon the plaintiff. Nor is this conclusion altered by the allegation in defendant's answer that "a charge of this character [for handling] is made customarily and generally, and has been for many years, in the warehousing industry throughout the country * * * for such and similar services." Even apart from the indefiniteness and uncertainty of this allegation as an averment of a custom which would be enforceable in law, it is recognized that a custom may not overturn the express provisions of a statute. Franklin Sugar Refining Co. v. Kane Milling & Grocery Co., 278 Pa. 105, 122 A. 231, 29 A.L.R. 1213.

A decree may be submitted in conformity with this opinion.