# WILLIAM STAROSKE, Appellant, v. PULITZER PUBLISHING COMPANY.

### Division One, June 1, 1911.

1. **CONTRACT: General Custom: Necessary Elements: Not Pleaded.** A general custom usually, without mention, forms a part of contracts respecting the matter to which such general custom pertains. Certainty, generality, fixedness and uniformity are essential elements of such custom. In this case the petition declares upon a contract between the carrier of a city newspaper route and the publisher of the paper carried thereon. Said petition states that when one contracts for such route in that city it is understood and agreed, according to a well established custom which has existed for more than fifteen years, that the carrier shall have the exclusive right, for an indefinite period, to sell the paper on his route; that he shall have the right to buy and sell the paper at a certain price; and that he may sell the route, with all the above rights and privileges and the good will of such business, with the consent of the publisher. *Held*, that such allegations do not disclose the above-mentioned elements essential to a general custom.

2. ———: **Local Custom: Not Well Pleaded.** A local or particular custom, relied upon as a constituent part of a contract forming the basis of appellant's cause of action, must be pleaded so explicitly as to show that both parties had knowledge of the custom when the contract was made and that they contracted with reference to it. The petition in this case makes no such allegations; therefore the local or particular custom in question cannot be considered in construing the contract in suit.

3. ———: **Agency: Termination: At Will of Either Party.** Appellant's petition alleges that he purchased from respondent newspaper, for a valuable consideration, a paper carrier's route and a list of the subscribers living thereon; that for twelve years the respondent recognized him as the owner of said route, and sold to him at one-half the regular subscription price enough papers to supply his subscribers. Such allegations show an agreement creating the relation of principal and agent, and since no time of expiration is fixed, expressly or by implication, by the agreement, it is terminable at the will of either party.

4. ——: ——: ——: ——: **Pleading Valuable Considera-
tion: Does Not Change Effect.** The allegation in a petition that
there was a valuable consideration for the contract forming
the basis of the action, does not of itself convert what is other-
wise shown to be an agreement terminable at the will of either
party, into an irrevocable agreement.

5. **AGREEMENT IN RESTRAINT OF TRADE: Two Parties Nec-
essary: Principal and Agent Not Two Parties.** An agreement
between the publisher of a newspaper and the carriers of that
paper, to the effect that said carriers (as a condition of being
retained in service) shall not carry the papers of a named
competitor, does not violate section 8978, R. S. 1899, declaring
illegal every agreement to regulate prices, control or limit
trade, etc. The carriers were not in competition with each
other, and, being the agents of the publisher, they constituted
with him but one party in legal effect.

Appeal from St. Louis City Circuit Court.—*Hon.
Moses N. Sale,* Judge.

AFFIRMED.

*Charles Fensky* for appellant.

(1) Where an agency exists, coupled with an
interest, such agency is irrevocable. Lockart v.
Forsythe, 49 Mo. App. 658; State ex rel. v. Walker,
88 Mo. 284; Hunt v. Rausmanier's Admr., 8 Wheat.
174; Barr v. Schroeder, 32 Cal. 609; Coffin v. Landis,
46 Pa. St. 431; Blackstone v. Buttermore, 53 Pa. St.
266; South v. Kerman, 5 Weekly Law Bul. 145; Powell
v. Road Co., 24 Ala. 441. This court in numerous cases
held that where an agency is created, and although the
agent has no property or interest in the agency, if the
agent spent time and money thereon the agency can-
not be revoked by the principal without liability there-
for. Glover v. Henderson, 120 Mo. 368; McCray v.
Pfost, 118 Mo. App. 535; Shell v. Railroad, 132 Mo.
App. 535; White v. Railroad, 202 Mo. 540. (2) Our
statutes denounce any agreement, arrangement or
combination made with a view to lessen, or which
tends to lessen, full and free competition in the sale

of any article.  In order to vitiate a contract or combination, it is not essential that its result should be a complete monopoly; it is sufficient if it really tends to that end, and to deprive the public of the advantages which flow from free competition (United States v. Knight Co., 156 U. S. 16), and the necessary effect of the agreement is the criterion, no matter what the intent was on the part of those who signed it.   United States v. Freight Assn., 166 U. S. 342; Missouri v. Ins. Co., 152 Mo. 1; R. S. 1899, sec. 8978; Door Co. v. Feulle, 215 Mo. 462; Carew v. Rutherford, 106 Mass. 1; Van Horn v. Van Horn, 27 Vr. 218; Railroad v. Penn. Co., 54 Fed. 730; Reg. v. Druitt, 10 Cox Cr. Cas. 593; Bishop, New. Cr. Law, sec. 230; Desty, Cr. Law, sec. 11b; Morris Run Co. v. Barclay, 68 Pa. St. 173; State ex inf. v. Standard Oil Co., 218 Mo. 359; Heim Brewing Co. v. Bellinder, 97 Mo. App. 64; Fink v. Granite Co., 187 Mo. 244; Walsh v. Plumbers Assn., 97 Mo. App. 280.   The petition in this case stated a cause of action on both theories advanced.

*Judson & Green* for respondent.

(1)   The alleged agreement between respondent and its carriers to the effect that the said carriers must not deliver the St. Louis Times while they were acting as carriers of the Post-Dispatch, was not in violation of section 8978 of the Anti-Trust Act of 1899. Whitwell v. Tobacco Co., 125 Fed. 454; Wood Co. v. Hardware Co., 75 S. C. 378; State ex rel. v. Associated Press, 159 Mo. 410; Virtue v. Creamery Co., 179 Fed. 115; United States v. Standard Oil Co., 173 Fed. 191; Phillips v. Cement Co., 125 Fed. 593; Weiboldt v. Standard Fashion Co., 80 Ill. App. 67; Houcks v. Wright, 77 Miss. 476; Walsh v. Dwight, 58 N. Y. Supp. 288.   (2)   The business of news-gathering or of printing and publishing a newspaper is strictly a private business and is not impressed with any public use

whatsoever; and the Anti-Trust Statutes are not applicable to such business, or to such a contract as we have here. State ex rel. v. Associated Press, 159 Mo. 410. (3) Appellant cannot change his theory, or shift his ground, in this court, by claiming here for the first time that his petition states a cause of action for breach of contract; but he must stand or fall here on the same theory on which he tried the case in the lower court. Gordon v. Park, 202 Mo. 263; Fuess v. Kansas City, 191 Mo. 692; Smith v. Box Co., 193 Mo. 715; Bridwell v. Cockrell, 122 Mo. App. 196. (4) The Post-Dispatch had the right to stipulate with its carriers for their sole and undivided loyalty, and to require them to give their undivided time and attention to its business. Whitwell v. Continental Tobacco Co.. 125 Fed. 454. Such a rule was reasonable and commendable. Matthew, VI. 24.

BLAIR, C.—This is an appeal from an order overruling a motion to set aside a nonsuit taken when the court below, at the beginning of the trial, sustained an objection to the introduction of evidence under the following petition:

"Plaintiff states that defendant is and at all times hereinafter mentioned was a corporation organized under the laws of the State of Missouri, engaged in publishing and selling a daily newspaper in the city of St. Louis, called the St. Louis *Post-Dispatch,* and caused the said newspaper to be delivered to its subscribers in said city of St. Louis by means of a system of carriers; and for the purpose of distributing and delivering without cost to itself to its subscribers its said newspapers so published as aforesaid; the defendant has divided the city of St. Louis into certain numerous districts commonly called 'routes,' and has sold or given such 'routes' to various paper carriers in said city aforesaid, together with the control of the subscription lists of said 'routes,' and certain

rights and privileges hereinafter described and the good will of the business of acting as such carriers.

"Plaintiff states that when a route is so acquired and is owned by a newspaper carrier, it is understood and agreed between defendant and such carrier, according to a well established custom which has existed for more than fifteen years last past with the defendant and its carriers, that said carriers shall have the exclusive right, for an indefinite period of time, to sell and deliver the *Post-Dispatch* to the subscribers of said paper upon his route, and that he shall buy and defendant will sell to him copies of the *Post-Dispatch* at one-half the regular subscription price of such newspaper, to-wit: one-half cent for each copy of the afternoon edition and two and one-half cents for each copy of the Sunday morning edition, and that such carrier shall sell the same at the regular price of subscription of said newspaper, to-wit: one cent for each copy of the daily afternoon edition and five cents for each copy of the Sunday morning edition; and that the defendant will sell to such carrier a sufficient number of copies of its papers as will supply all the subscribers living upon such route of such carrier, and that the owner of said route may sell and transfer the same, together with all of the rights and privileges above described and the good will of such newspaper carrying business, provided such owner of said route makes such sale and tranfer with the approval, knowledge and consent of the business manager of said newspaper.

"Plaintiff further states that on or about the 15th day of October, 1895, he purchased from defendant for a valuable consideration, one of the aforesaid routes, which was known as Post-Dispatch Route No. 13, together with a list of subscribers of said paper on said route, which at said time consisted of about 170 subscribers.

"Plaintiff states that from the time he purchased said Route No. 13 from defendant in the year 1895, up to on or about the 16th day of April, 1907, plaintiff faithfully performed all of his duties as a carrier of the St. Louis *Post-Dispatch,* and promptly paid defendant for all copies of the newspaper which were sold by defendant to plaintiff for delivery to the subscribers upon said route, and that by years of devotion to his said business as a newspaper carrier of the St. Louis *Post-Dispatch* he established a substantial and profitable business which he carried on successfully for many years, until on or about the 16th day of April, 1907, at which date and for a long time prior thereto, he had increased the number of subscribers of the St. Louis *Post-Dispatch* from 170 to 530 daily afternoon subscribers, and 410 Sunday morning subscribers, from which said business plaintiff derived a profit and income of about $27.00 per week; and during all this time from the year 1895 until on or about the 16th day of April, 1907, defendant recognized plaintiff as the owner of said Post-Dispatch Route No. 13, and sold to him at one-half the regular subscription price, a sufficient number of copies of its newspapers to supply all of his customers upon said route which were subscribers for said newspaper.

"Plaintiff states that on or about the 15th day of April, 1907, an afternoon English newspaper known as The St. Louis *Times* was first published and issued to the public by the German-American Press Association, a corporation, as a competitor in the business of afternoon newspaper publications, and for more than three months prior to said date notice had been given to the public that the publication of such newspaper to be known as the St. Louis *Times* would be made on or about said date, and the fact of such intended publication became generally known to the public in the city of St. Louis, Missouri, and to this defendant.

"And for his cause of action, plaintiff states that defendant, and Charles J. Goedde, Henry J. Goedde, Otto B. Steiner, Fred Nolker, Fred W. C. Ruesche, J. Blumenthal, Ed J. Ichaff, Ben Tzinsberg, Frank S. Wenger, Henry A. Lippert, Jos. J. Remaklus, who were owners of the Post-Dispatch 'routes,' and sold and delivered the said *Post-Dispatch* newspapers to all subscribers of that paper upon their respective 'routes,' together with other *Post-Dispatch* carriers whose names are unknown to plaintiff and therefore cannot be stated, did, on or about April 15, 1907, in order to limit competition in the trade of publishing and selling daily afternoon newspapers in the city of St. Louis, Missouri, enter into an agreement and understanding that any and all carriers of the said St. Louis *Post-Dispatch* in the city of St. Louis, Missouri, would be allowed and could sell and deliver to subscribers any and all newspapers published in the city of St. Louis except the aforesaid St. Louis *Times,* published by the German-American Press Association; and that any and all carriers of the said St. Louis *Post-Dispatch* who would not enter into and become a member of or a party to said agreement and understanding could not longer act as carrier of the St. Louis *Post-Dispatch,* and could no longer buy said paper at one-half the regular subscription price, and sell and deliver its said newspaper to subscribers on his 'route' at the full subscription rates.

"Plaintiff states that the aforesaid agreement and understanding between defendant and some of its carriers is in violation of section 8978, Revised Statutes Mo. 1899, and is illegal and void.

"The defendant by its agents, employees and officers, requested this plaintiff to become a party to such unlawful combination, agreement, understanding and conspiracy, and requested him to sign an agreement, together with such other carriers, but this plain-

tiff refused to sign said agreement or become a member of or a party to such understanding or agreement.

"Plaintiff states that after plaintiff so refused to sign said agreement, defendant refused and has continued to refuse to sell to plaintiff copies of the St. Louis *Post-Dispatch* of either its afternoon or Sunday morning editions, and defendant by its officers, representatives, agents, servants and employees notified subscribers upon Post-Dispatch Route No. 13 that plaintiff was no longer connected with the St. Louis *Post-Dispatch,* and defendant by its officers and representatives appropriated Post-Dispatch Route No. 13 to its own use, by appointing another carrier to take charge of it and defendant neither offered or paid plaintiff anything for his ownership of said route.

"Plaintiff states that by reason of the unlawful and illegal agreement and understanding between defendant and the carriers of the *Post-Dispatch,* and plaintiff's refusal to sign such unlawful and illegal agreement and understanding, and defendant's acts in refusing to further carry out its contract with plaintiff to sell him copies of the *Post-Dispatch* at half its subscription rates, with which to supply all subscribers upon Post-Dispatch Route No. 13 at the regular subscription price, plaintiff has been greatly damaged in his business as a carrier of said St. Louis *Post-Dispatch* newspaper—the acts of defendant having the effect of totally destroying his business and the sale value of his route, and totally depriving him of the income derived from said route by the purchase and sale, under his aforesaid contract with defendant, of a sufficient number of copies of the said St. Louis *Post-Dispatch* afternoon and Sunday morning editions to supply the subscribers upon route known as Post-Dispatch Route No. 13.

"And plaintiff states that the reasonable value of the rights and privileges growing out of the contract with defendant for route known as Post-Dispatch

Route No. 13 is five thousand dollars, and the income which plaintiff would have derived from conducting his said business from his purchase and sale of the said St. Louis *Post-Dispatch* with which to supply the customers upon said route since the 16th day of April, 1907, was about three hundred and twenty-five dollars.

"Wherefore plaintiff prays judgment for treble damages against the defendant in the sum of fifteen thousand three hundred and twenty-five dollars, and the costs of this suit, including a reasonable attorney's fee, as provided by the statutes of Missouri."

The damages alleged to have accrued from the revocation of the contract set up in the petition constitute the basis of this action, whether it be considered one for simple breach of contract or as brought for injury resultant upon a violation of the statute against pools, trusts and conspiracies. [Whitwell v. Continental Tobacco Co., 125 Fed. 461.]

**I.**   The contentions of appellant's counsel in this court involve the assumption that the contract between appellant and respondent must be construed as including those provisions which, it is alleged, it was respondent's practice to incorporate in its agreements with carriers other than appellant.

It is taken for granted that this practice rose to the dignity of a custom and, as such, entered into and formed a part of the contract between the parties to this action.

It is not to be doubted that if a general custom exists it usually enters into and forms a part of contracts respecting the matter to which such general custom pertains (Southwestern Freight and Cotton Press Co. v. Stanard, 44 Mo. 1. c. 82), but the allegations of the petition do not disclose that the mere course of contracting alluded to possessed those elements of certainty, generality, fixedness and uniformity which are essential to constitute such a custom.

[Ehrlich v. Ins. Co., 103 Mo. l. c. 238; Martin v. Hall, 26 Mo. l. c. 388; 2 Parsons on Contracts, p. 541.]

Nor do the allegations of the petition meet the requirements of the rule supported by reason and the great weight of authority, that if a particular or local custom is relied upon, it must be pleaded (Sherwood ·v. Savings Bank, 131 Ia. l. c. 530, *et seq.*; Oriental L. Co. v. Blades L. Co., 103 Va. l. c. 741; Mobile Fruit & Trading Co. v. Judy, 91 Ill. App. l. c. 91; Con. Coal Co. v. Jones, 120 Ill. App. l. c. 146; Hayden v. Grillo's Admr., 42 Mo. App. l. c. 5, 6), and pleaded so explicitly. that it will appear not only that such local or particular custom existed but that both parties had knowledge of it at the time the contract was made and, in addition, contracted with reference to it. · [Hendricks v. Middlebrooks Co., 118 Ga. l. c. 137; Antomarchi's Exr. v. Russell, 63 Ala. l. c. 361; Wallace v. Morgan, 23 Ind. l. c. 402, *et seq.*; Overman v. Bank, 30 N. J. L. . l. c. 65.]

This rule is particularly applicable to this case. Here a local custom, or individual practice, it is now · contended, entered into and became a part of the contract between appellant and respondent. This is not a case in which a custom is relied upon merely as evidence of some other fact in issue, or to explain an ambiguity, or the meaning of some trade or technical term, but one in which an attempt is made to rely upon a custom or practice as a constituent part of a contract which forms the basis of appellant's supposed cause of action. [Sherwood v. Bank, 131 Ia. l. c. 532.]

The petition does not allege that respondent knew that appellant was contracting with reference to the alleged practice of respondent in framing its previous contracts with its carriers, nor that appellant contracted with reference to such practice, nor even that appellant knew of such practice or custom of respondent when he entered into his agreement with it. The

practice of respondent in contracting with its other carriers previous to the making of the contract in this case cannot, therefore, be considered in construing the contract between appellant and respondent. [Hendricks v. Middlebrooks Co., 118 Ga. l. c. 137; Sugart v. Mays, 54 Ga. l. c. 557; Barlow v. Lambert, 28 Ala. l. c. 708, *et seq.*] To hold otherwise would be equivalent to saying that courts can refashion contracts for the parties thereto for the mere purpose of bringing them into accord with other contracts with other persons.

II. Eliminating from consideration that portion of the petition dealt with in the preceding paragraph, the agreement between the parties in this case was one by which respondent secured the personal service and skill of appellant as a carrier of its paper and as its representative with respect to the matter of its circulation in the district in the city of St. Louis which is designated as "route 13." The relation created was that of principal and agent. [Willcox v. Ewing, 141 U. S. l. c. 636.]

There was no time fixed, expressly or by implication, at which the agreement was to expire. The general rule is that such an agreement is terminable at the will of either party. [Fox v. Commercial Press Co., 28 Ky. Law Rep. l. c. 46, 47; State ex rel. v. Walker, 88 Mo. l. c. 283, 284.]

The only allegation of the petition which could be urged as bringing this contract within any of the exceptions to the rule is that with reference to the payment of "a valuable consideration" for the "route." There are authorities which hold that the mere allegation, in a case of this kind, that there was "a valuable consideration" for the contract, is wholly insufficient, and that not even by verdict is such a defect cured. [Brush v. Raney, 34 Ind. l. c. 417; Leach v. Rhodes, 49 Ind. 292; Taylor v. Leeson, 35 Ind. App. l. c. 622; Fulton v. Varney, 102 N. Y. Supp. l. c. 611.]

If it be conceded that such an objection cannot be heeded when the question is not raised until the trial has begun (Storseth v. Folsom, 45 Wash. l. c. 375, 378), nevertheless the contract in this case is not ex-. cepted from the operation of the rule.

Whatever the consideration, the petition does not allege that it was paid to secure the addition to the contract of any *express* stipulation that it should be irrevocable, and no such provision was included in the contract. The case made by the petition is simply that appellant induced respondent for "a valuable consideration" to confer upon him an agency revocable by its nature at the will of either party. The consideration in this case, so far as the petition discloses, introduced no element of estoppel, added nothing to the contract between the parties, but merely induced the execution of an agreement terminable at will.

In a case in which a consideration is paid to induce the execution of a contract which fixes its own duration, or which, from its nature, is terminated by performance of its conditions, or when such consideration is paid to procure the inclusion of an express covenant against revocation, then the exception applies. But an agency such as this is alleged to have been (Willcox v. Ewing, 141 U. S. l. c. 636) is not rendered *immortal* by the passing of a consideration for its creation. The parties might have provided that the contract should be irrevocable (Wharton on Agency, sec. 95), but the petition discloses that they, in legal effect, did the opposite. [Stonega Coal Co. v. Railroad, 106 Va. 223.]

Respondent had both the power and the right (Kilpatrick v. Wiley, 197 Mo. l. c. 167) to pursue the course it did, and no action lies for the revocation.

The agreement in this case is, in this respect, unlike those in the cases of Newhall v. Journal Printing Co., 105 Minn. 44, and Harlow v. Oregonian Publishing Co., 53 Ore. 272, 45 Ore. 520.

III.   Neither did the agreement between respondent and its other carriers render the exercise of the power to revoke actionable.   It is true that it is in some cases unlawful to agree or conspire to do an act which either party to such agreement might, alone, lawfully do.   The attempt to apply that rule here must fail.   There is no agreement, no conspiracy, within the meaning of this rule, alleged in the petition. The gist of the allegations in that respect is that respondent imposed upon its carriers as the condition of their being retained in its service, the requirement that they should not act as carriers for a rival newspaper which was on the eve of entering into competition with respondent.   That this was not a restriction of competition among the carriers is apparent, since they were in no manner in competition with each other. Nor was any other publisher a party to this transaction.   Respondent simply declined to compete with itself.   No one was concerned in this agreement, so far as the petition states, except respondent and its agents. In other words an attempt is made to allege an agreement to which there was, in legal effect, but one party. If the anti-trust statute does not prohibit the refusal of a single individual to sell, save to customers of his choice, or to sell at all (Whitwell v. Continental Tobacco Co., 125 Fed. 461), neither, for a stronger reason, does it deprive respondent of the right to withhold the power to represent it in selling its paper from those who refuse to protect its interests by refraining from aiding its competitors.

Under the rule laid down in the last cited case, respondent possessed the right to refuse to sell its papers to any person *who might subscribe* for a competing paper.   Certainly, also, could it refuse to retain in its service those who made it their business to *secure subscribers* for its competitors.

From these considerations it follows that the judgment must be affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.