The complainants, eleven in number, are employed in the marine department of the defendant, the New York Central Railroad Company. That department of the railroad service appears to consist of two several crafts — (1) the tug, or float craft; and (2) the lighter, or barge, craft. These complainants at various times, in the year 1915, in the years 1920, 1921, 1922 and 1926, entered the railroad company's marine service in the tug, or float craft. Subsequently, in, or about, the year 1926, they were transferred from the tug, or float, craft to the lighter, or barge, craft. They remained in this *Page 378 
latter service until sometime in April, 1931, when nine of them were withdrawn, or suspended therefrom. They, thereupon, complained about their suspension to Howard C. Forbes, a delegate, or representative, of the defendant the Lighter Captains' Local 996 of the International Longshoremen's Association, of which union they were members; and Forbes, without direction from the said union, as he stated, and independently of it, conferred with Leroy Relyea, an official, or representative, of the railroad company, about the question of the complainants' suspension from service. The day following this conference, the suspended complainants were reinstated, or returned, to active service — they had been absent therefrom four days.
They then continued in service until January 13th, 1933, when they were again suspended or "laid-off." At the same time, other employes, longer in the lighter craft service, but with less years in service in the marine department, were not disturbed and were kept on the active list in the lighter, or barge, craft. Complainants insist they should have been retained and preferred over the others who, though they concede them to be their seniors in the lighter, or barge, craft, are their juniors in years of entire service in the marine department. They maintain that their total years of combined tow and lighter craft service endowed them with these "senior rights." This conclusion the defendants ignored and complainants now urge they should be compelled to respect it because of (1) custom; (2) the "Stone Award;" and (3) agreement. These conclusions, the defendants say, are without warrant of fact or of law. They say that the tow, or float, craft never carried seniority rights; and that rights of seniority did not attach to complainants until after they became associated with the lighter, or barge, craft — only then and there.
Senior comprehends "one older in office, or whose entrance upon an office was anterior to that of another." State v. Hueston,44 Ohio St. 1; 4 N.E. Rep. 471.
Where in this case does an instance of (1) custom appear to have been successfully invoked to support seniority rights of complainants, or any other employe of the railroad company? *Page 379 
It is not in the testimony. The record does not disclose that such custom existed while any of the complainants were in the tow craft. Complainants produced witnesses Relyea and Forbes who testified a tow boat captain could at any time, at will, dismiss an employe from service in the tow craft. Masten (a complainant) testified (page 57 of testimony): "Q. And you had been in service in the tug division since 1920, and I suppose that there were men in the towing division who came into service after you did. That's between 1920 and 1926, is that right? A. I suppose there was. Q And those men continued to work on their tugs when your tug was laid up, is that right? A. Yes. Q. Did you seek to displace any of those junior men? A. There was no such thing as bumping men. The captains could hire their own men at that time. Mr. Pesin: What? The witness: The captains could hire their own deckhands at that time. The court: When was that? The witness: In 1926. Mr. Pesin: That was on the tugs and floats? The witness: Yes. Mr. Pesin. That's all."
Certainly testimony of this character by complainants' witnesses does not tend to support the contention of complainants — the effect is quite the reverse. A custom or usage, before its benefits can be invoked, must be proved to exist; it "must be established, known, certain, uniform, reasonable and not contrary to law." Steward and Metler v. Scudder, 24 N.J. Law 96;Barton v. McKelway, 22 N.J. Law 165; 2 Greenleaf ¶ 251. The testimony shows no custom or usage whatever.
The fact that when nine of these complainants were withdrawn, or suspended, from service in April, 1931, and after a conference between Relyea, an official of the railroad company, and Forbes, a representative of the defendant union (who denied he conferred in his capacity of union delegate), were reinstated, carries no probative force of the existence or the recognition of seniority rights. I cannot find as a fact the railroad company, in substance or otherwise, declared "you have rights of seniority which we recognize, and because of those rights, we reinstate you." The evidence permits no such inference; it does not disclose the reason for the dismissal, *Page 380 
nor does it state why the men returned to service; it simply shows that the railroad company restored them to active employment. Why it did so, is not apparent to me and, therefore, I can draw no conclusions.
Relyea, the railroad official with whom Forbes, the complainants' representative, conferred, and Forbes, both testified, on behalf of the complainants as to the incident of the dismissal and reinstatement; neither of them stated that the men were returned to work because of the recognition of seniority rights by either the union or the railroad company. In fact, Forbes, testifying for complainants, said they had no seniority rights "for tow boat men" under the (2) "Stone Award" (page 4 of testimony). The contention of the complainants that the April, 1931, dismissal, followed by reinstatement, was an acknowledgment of seniority rights, and the observance of a custom to hold employes who were senior in point of service, is without weight; the sole act of reinstatement in itself does not establish usage or custom. Our courts say that "usage cannot be proved by isolated instances, but must be so certain, uniform and notorious that it must be presumed to have been understood by the parties as entering into and constituting a part of the contract."Steward and Metler v. Scudder, supra.
Complainants say that (2) the "Stone Award" favored and created seniority rights for complainants. This frequently discussed "Stone Award" carries the date of March 7th, 1919; it regulated the pay and working conditions of employes in the marine service of railroads under the jurisdiction of the United States, or Federal, Railroad Administration, in New York harbor; the chairman of the Railroad Administration was A.J. Stone. It, among other things, provided: "This schedule becomes effective as of March 1st, 1919, and provided federal control continues, will remain in full force for one year and thereafter until thirty days' notice is given by either party of a desire to change. No change will be made until approved by the proper officer, and the duly authorized committee representing the employes shall have been heard. In filling a vacancy, qualifications being equal, seniority will prevail." *Page 381 
Under its terms it was to exist for a period of one year, or until March 1st, 1920 — provided federal control continued. The federal government has long since relinquished its control and returned the railroads to private ownership. The "Stone Award" presents a rule for filling vacancies. I have no warrant or power to read into it, or into the contract of employment of these complainants with the railroad company, any terms or conditions not calculated or comprehended by the parties, which does not properly belong there. I may interpret, but I cannot add. There is no evidence in the case which shows that the "Stone Award" rule continued longer than the announced period of its existence of one year, or that it has had any binding force, or effect, since then, or that it has from then on, at any time, been observed or considered in questions of increasing or decreasing the number of workmen. The record in this case forces the opinion that the "Stone Award" confers no seniority rights upon the complainants.
If the complainants are entitled to seniority by (3) agreement, then it extends from the date of a definite agreement to that effect with the railroad company.
I fail to find any evidence of a clear understanding of terms between the complainants and the defendant railroad company until after the conference had between the representatives of the union and the railroad company in September, 1931, which was later communicated to the defendant union by letter dated October 5th, 1931, which reads as follows:
"Referring to our conference of Sept. 23rd about the practice of deckhands and floatmen transferring to our barges as captains. Effective October 1, 1931; we will not permit any other employes of the Marine Dept. to accept positions as barge captains except as junior or new men; (Signed) Lloyd, General Superintendent."
I believe this communication from the railroad company unquestionably referred to subsequent employes. It said nothing whatever about employes who were then in the barge service. Subsequent conferences between the railroad company and the union official definitely established the seniority rights of those in the lighter service, and January 1st, 1933, *Page 382 
appears to be about the time when the first official seniority list was agreed upon between the defendant railroad company and the defendant union. I can recall no other date.
The instant case is a close approach to Aulich v. Craigmyle
(Court of Appeals of Kentucky), 59 S.W. Rep. 2d 560.
Part of the decision fits in with the facts herein, the reasoning therein may be applied here, and it may be worth quoting:
"Craigmyle's cause of action is based on his claim to seniority as against both the Order of Railroad Telegraphers and the railroad company, by virtue of his continuous employment since 1905, and the custom of the railroad company and its employes, during this period of time, to recognize and observe the right of the employes to seniority.
"The courts have for a long time used the term `custom' as co-ordinate with `usage,' and we will so regard it in our consideration of this case. Thomas v. Charles (Ky.),119 S.W. 752; Brumfield v. Consolidated Coach Corp., 240 Ky. 1;40 S.W. Rep. 2d 356; Franklin Sugar Refining Co. v. KaneMilling, c., Co., 278 Pa. 105; 122 Atl. Rep. 231;29 A.L.R. 1213. To establish a custom it is not enough to prove the act is frequently done; it must be both alleged and proven to be certain, general, uniform, and recognized. Where it is so alleged and proven, it is a fair presumption that the parties, on entering into their engagement, do it with reference to the custom, and agree that their rights and responsibilities shall be determined by it. A practice to arise to the dignity of a custom so as to enter into and form a part of a contract must possess those elements of certainty, generality, fixedness, and uniformity, as are recognized by the law as essential to constitute a custom. A loose, variable custom or discretionary practice does not arise to the dignity of a custom so as to control the rights of the parties to a contract. If the usage leaves some material element to the right of exercising an option, or discretion, of one of the parties, it does not constitute a custom. Staroske v. Pulitzer Publishing Co.,235 Mo. 67; 138 S.W. Rep. 36; Porterfield v. American SuretyCompany of New York, 201 Mo. App. 8; 210 S.W. Rep. 119; Lawrence
v. Portland Railway, Light and Power Co., 91 Or. 559;179 Pac. Rep. 485; Chicago, M. *Page 383 and St. P. Railway Co. v. Lindeman (C.C.A.),143 Fed. Rep. 946; Moffitt v. Connecticut Co., 86 Conn. 527; 86 Atl. Rep. 16;People's National Bank v. Citizens' Savings Bank of Paducah,239 Ky. 30; 38 S.W. Rep. 2d 959; Huston v. Peters, 1Metc. 558; Caldwell v. Dawson, 4 Metc. 121; National Seed Co.
v. Leavell, 202 Ky. 438; 259 S.W. Rep. 1035.
"In the stipulation of facts in this case it is agreed: `That there was no binding agreement as to seniority of the employes of the telegraphic department prior to 1919, but that such right was merely recognized, the railroad company reserving for its discretion, the final decision as to whether it would or would not apply this usage.' This language leaves no doubt in the distinterested mind that the railroad company was under no obligation to recognize or observe the rights of seniority of its employes, unless it chose in the exercise of its discretion to do so and clearly distinguishes this case from Piercy v. L. andN. Railroad Co., 198 Ky. 477; 248 S.W. Rep. 1042; 33 A.L.R. 322.
We are convinced in the present case that there was no such custom existent and recognized by either the company or its employes between 1905 and July, 1921, sufficient to support the presumption that the right of seniority was a part of Craigmyle's contract of employment. * * *
"The members of the Railroad Telegraphers' Union possessed the absolute right to formulate and adopt such constitution and by-laws as they deemed proper to accomplish the purpose of the organization. Being a voluntary association, its constitution and by-laws become a part of the obligations entered into by a member when he joins. In a controversy between a member and the association, the remedies provided by its constitution and by-laws were the remedies within the organization, and as a general rule they must be exhausted before an appeal by a member to the courts. Emma v. Loggia Fasci Italici,7 N.J. Mis. R. 387; 145 Atl. Rep. 630; Roxbury Lodge v. Hocking,60 N.J. Law 439; 38 Atl. Rep. 693; 64 Am. St. Rep. 596. The general applicable rules in such cases were formulated and stated inRoxbury Lodge v. Hocking, supra; Walsche v. Sherlock,110 N.J. Eq. 223; 159 *Page 384 Atl. Rep. 661. It is not within the province of the court to inquire into and determine the expediency, practicability, or wisdom of the constitution and by-laws of the Order of Railroad Telegraphers, nor to relieve its members of the operation or enforcement thereof, so long as they do not violate, trespass upon, or destroy the property or contractual right of its members, or transgress the bounds of reason, or contravene public policy or the laws of the land. In connecting himself with the organization, Craigmyle subjected himself fully and completely to the power of its administration, within the legal limits of the power of the organization. On becoming a member thereof his right of seniority was controlled thereafter by its by-laws which were at that time in force, or thereafter adopted. Fish v. Huddell,60 App. D.C. 263; 51 Fed. Rep. 2d 319; Yazoo and M.V.Railroad Co. v. Sideboard, 161 Miss. 4; 133 So. Rep. 669;Malloy v. Carroll, 272 Mass. 524; 172 N.E. Rep. 790; State, exrel. Smith v. Kanawha County Court, 78 W. Va. 168;88 S.E. Rep. 662; 20 A.L.R. 1030. His right to seniority before becoming a member of the organization was subject to the right of adoption, or discretion, of the railroad company to recognize it or not. His right thereto prior to his return to the Cincinnati Terminal was in no sense a vested, contractual, or property right, justifying the court, either then or now, in interfering to preserve it. Schaup v. Grand International Brotherhood ofLocomotive Engineers et al., 223 Ala. 202; 135 So. Rep. 327;Porterfield v. American Surety Co., supra; McConville v. MilkWagon Drivers' Union, 106 Cal.App. 696; 289 Pac. Rep. 852, 853;Clark v. Morgan, 271 Mass. 164; 171 N.E. Rep. 278."
Finding the complainants' contention of (1) custom, (2) the "Stone Award," and (3) agreement, without support in the evidence, and that finding being dispositive, it is unnecessary to discuss the other allegations of the complainants' treatment, or consideration of their claim, by the defendant union.
Considering the entire situation, I shall advise a decree dismissing the bill of complaint.
NOTE — The above determination, carrying the notation that it was "Not to be printed in any report," was filed with the clerk of this court. Subsequently, on appeal, there was an affirmance by the Court of Errors and Appeals in a per curiam opinion reported in 117 N.J. Eq. 20. Since the hearing in this court, several cases involving the above principles have arisen, and counsel refer to the unreported decision. Numerous requests to have it printed in the official reports have been made. Consequently I so order.
 LUTHER A. CAMPBELL, Chancellor. *Page 385