**First Mission Covenant Church of Rockford, Illinois, Appellant, v. Rockford Broadcasters, Inc., Appellee.**

**Gen. No. 9,963.**

Opinion filed July 20, 1944.
Opinion modified and rehearing denied October 4, 1944. Released for publication October 6, 1944.

WELSH & WELSH, of Rockford, for appellant; C. K. WELSH, of Rockford, of counsel.

MILLER, THOMAS & HICKEY, of Rockford, for appellee; L. C. MILLER and F. E. HICKEY, of Rockford, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

This cause is here on an appeal from a decree of the circuit court of Winnebago county, dismissing for want of equity appellant's complaint seeking specific performance of a contract for broadcasting, without cost to appellant, its church services each Sunday from 10:45 to 12:15 p. m., and its Julotta services each Christmas morning from 5:00 a. m. to 7:00 a. m.

The controversy grows out of the following facts: In the year 1923, the Reverend A. T. Frykman, pastor of appellant church at Rockford, owned and operated a radio broadcasting station, licensed under the call letters KFLV. The religious services of the church each Sunday and the Julotta services were regularly broadcast between the hours above mentioned, without cost to the church. Rev. Frykman testified that he owned the station as pastor of the church; that prior to May 1929, the station was financed by sponsored programs and by voluntary contributions, and that in addition to the church services, classical programs were broadcasted. From the minute book of the church it appears that he turned the station over to the church in September 1924, and that it was turned back to him in December 1927, because the church could not enter into agreements required to become affiliated with

other stations and to be connected with telephone service by special wire. The resolution turning the station back recited that it was on the condition that the church should receive continued free service as before from the committee to be appointed by the trustees to have entire charge of the operation of the station to further the object for which it was originally built, "namely the spreading of the Gospel of Jesus Christ." The free broadcasting was carried out by the pastor until appellee, an Illinois corporation, was organized through the efforts of the pastor and several members and trustees of the church, in May 1929, all of the four incorporators and the eleven subscribers to the stock, except one or two, being members of the church. The corporation was organized under the 1919 act in relation to corporations for pecuniary profit, with a capital stock of $50,000 with $4,000 paid in cash and $33,500 paid in property.

The statement for incorporation was acknowledged before a notary public on May 20, 1929, filed in the office of the secretary of state on May 24, 1929, and the certificate of incorporation bears the latter date. On the same day that the statement was acknowledged, May 20, 1929, Rev. Frykman executed an assignment to the "Rockford Broadcasters, Inc.," of all of his rights, franchises and contracts from the Federal Radio Commission, in which the consideration is expressed as $12,500 and a bill of sale to the other ten subscribers to the stock, for "all the following Goods, Chattels and Property, to-wit: Radio Broadcasting Station KFLV, together with all appurtenances belonging thereto wherever located," in which the consideration is expressed as $16,000. On the same day the vendees in the latter instrument executed another bill of sale to "Rockford Broadcasters, Inc.," in which the consideration is expressed as $21,000. Stock of the corporation was issued in exchange for the chattel

property. Rev. Frykman testified that he received the equivalent of $12,500.

Contemporaneously with the above-mentioned instruments, under date of May 20, 1929, an agreement was executed between Rev. Frykman and "Rockford Broadcasters, Inc.," reciting that "Whereas said party of the second part has purchased from the party of the first part, all his rights, franchises and contracts included in Radio Broadcasting Station License, Official Number 597, Call Letters KFLV, received from the Federal Radio Commission. . . . It is herewith mutually understood and agreed that the Sunday morning church service from 10:40 a. m. to 12:15 p. m. each Sunday is to be given to the Swedish Evangelical Mission Church of Rockford, Illinois and broadcasted without charge as per agreement outlined in the minutes of said church under date of ———. This agreement shall be binding on the heirs, executors, administrators, successors, and assigns of each of the parties hereto."

The board of directors of the corporation and the board of trustees of the church were almost identical in personnel. Rev. Frykman continued as pastor of the church until he resigned in November 1934. Free broadcasting of the church services was continued by the corporation until October 13, 1933. At that time the corporation had become indebted, and all the issued capital stock was held by two of the members, as trustees, who were also creditors of the corporation. At that time a contract was entered between them and Alexander L. Sherwood concerning the latter's purchase of the stock held by them, in which provision was made for the payment to them of promissory notes of the corporation for $15,905.96, representing the corporate indebtedness to them. The agreement also contained a provision that the corporation should provide free broadcasting of the church services each Sunday from 10:45 a. m. to 12:15 p. m.

so long as such period was made available to the station by the radio commission, and that if such period be denied to the radio station by the commission, that another one and one half hour period would be allocated to the church. It also provided for free broadcasting of the Julotta service each Christmas morning. The minutes of a special meeting of the directors and of a special meeting of the stockholders of the corporation on the same day, recite a resolution to the same effect as the contracts. The notes were paid, and a receipt given the corporation on April 2, 1936, reciting that the payment "is in full satisfaction and performance of the terms of said agreements and that the same are null and void, cancelled, and of no further force and effect."

The free broadcasting of the church services was still continued until, under date of September 9, 1942, the then pastor received a notice from the corporation that by virtue of the rules and regulations of the Federal Communications Commission and the rules of the Mutual Broadcasting Company, to which chain the station belonged, it was necessary to restrict the time allotted to the church, and that until further notice the Sunday time would be from 11:30 a. m. to 12:15 noon. Thereafter, under date of October 13, 1942, the corporation advised the pastor that because of commitments with the Mutual Broadcasting System and the rules and regulations of the Federal Communications Commission, the corporation could no longer grant the church free broadcast time, and offering its facilities on the same basis as to other churches in the community. The free service was discontinued on October 11, 1942, demand for its continuation was made upon the corporation, and thereafter this suit was instituted.

The three principal defenses set up in appellee's amended answer to the complaint were, want of consideration for the agreements; release and termi-

nation of the agreement of October 13, 1933, by the receipt of April 2, 1936, and that the defendant corporation never ratified or approved the contract of May 20, 1929. At the close of the testimony for appellant, appellee filed a motion to dismiss the cause. Among the grounds for the motion it was claimed that there is no mutuality of remedy between the parties; that the full performance of the alleged contract rests upon the personal will and conduct of the parties and cannot be specifically enforced; and that the court could not in its ordinary modes of administering justice enforce a decree of the kind prayed for. The court struck these grounds from the motion and denied it. After the close of all the testimony, the chancellor sent a written communication to counsel for each of the parties, calling attention to the fact that neither of the contracts fixed any limitation of the time within which the free broadcasting was to be furnished, and asking for an expression from them as to whether it was to be perpetual or for a reasonable length of time. Later, he sent them another written communication, mentioning the general rule that a contract will not be specifically enforced in the absence of mutuality in its terms and requirements; and the general rule that a court of equity will not grant specific performance unless the decree can be carried out without continuous supervision, with a request for an expression of their views. Counsel for appellant filed a brief on all three of the points raised in the chancellor's letter. In a written memorandum of his decision the chancellor held that the purpose of organizing the corporation was for carrying on the broadcasting of the church services, and that there was a sufficient consideration for each of the contracts, and that the contract of October 13, 1933, was not released by the receipt of April 2, 1936. The suit was dismissed for want of equity on the grounds that the agreement was not enforcible because it lacked mutuality; that it was not definite as to time;

and that a decree of specific performance would call for protracted supervision and direction of the court.

Appellant claims that inasmuch as appellee has filed no cross-appeal, it is barred from asserting any cross-errors, but it has not attempted to do so. It is also claimed that appellee is barred from asserting any defense that was not alleged in its answer; and that when appellee refused to perform the contract for specific reasons stated, it waived all other grounds or contentions for nonperformance. A sufficient answer to these contentions is, in the language of the Supreme Court, that it is the decree and not the statement of the chancellor which is before us for review. Error cannot be assigned on the statement and its import is of no determining force here. Appellee has the right to sustain the decree upon any facts in the record whether the reasons given in the chancellor's statement are good or not. (*Chicago Title & Trust Co. v. Schwartz,* 339 Ill. 184.) Furthermore, appellee raised the points upon which the decree is based, in its motion to dismiss the suit, and although it has not assigned any cross-error on the striking of those grounds from the motion, it was not necessary to do so, because the chancellor adopted those same grounds as the basis of his decision. When the chancellor brought these points to the attention of appellant's counsel, as above related, indicating their determinative character, appellant did not claim that they were not cognizable under appellee's answer, which, if it had been done, would have enabled appellee to ask for and obtain leave to amend its answer so as to include such points. Instead, it elected to file briefs on the points, and treated them as properly at issue. It cannot now, after thus lulling appellee into a failure to amend its answer, take any advantage of it.

If appellant thought the contract could not be cancelled at the will of appellee because it had not run a reasonable length of time, or that the franchise should

be returned if the contract was cancelled, it was the moving party, and should have included those claims when the chancellor indicated by his letters that the contract was cancellable because of the indefinite time, and particularly called attention to whether the contract was to be perpetual or for a reasonable length of time. By these claims, appellant asks this court to try the case on something not in issue, the very thing about which it claims the lower court erred.

There can be no doubt that the contract was executory as to everything agreed to be done thereunder. The law is well settled that where no definite time is fixed during which an executory contract shall continue in force, it is terminable at the will of either party. (*Gage v. Village of Wilmette,* 315 Ill. 328; *Joliet Bottling Co. v. Joliet Citizens' Brewing Co.,* 254 Ill. 215; *Davis v. Fidelity Fire Ins. Co.,* 208 Ill. 375.) This alone justified the decree dismissing the suit, and makes it unnecessary to consider any other issue. The decree is accordingly affirmed.

*Decree affirmed.*