## WM. J. LEMP BREWING CO. v. EMS BREWING CO.
### No. 9312.

Circuit Court of Appeals, Seventh Circuit.
Nov. 5, 1947.

Rehearing Denied Dec. 3, 1947.

Samuel H. Liberman and Gideon H. Schiller, both of St. Louis, Mo., and Bruce A. Campbell, of East St. Louis, Ill., for appellant.

Arthur A. Felsen, of East St. Louis, Ill., and Walter R. Mayne and M. Jack Garden, both of St. Louis, Mo., for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff sued defendant to recover damages claimed to have arisen out of the wrongful termination and breach of a contract entered into by and between plaintiff, a Missouri corporation, William J. Lemp III, on the one part, and Central Breweries, Inc., an Illinois corporation, on the other part. By successive assignments from Central, defendant became a party to the contract. Defendant's motion for judgment on the pleadings was sustained. The court dismissed the complaint and entered judgment for costs against plaintiff. From this judgment plaintiff appeals.

The undisputed facts are that after 1892 and until the manufacture of beer became illegal, plaintiff manufactured a beer which achieved an outstanding reputation for quality and became widely known to the purchasing public in the States of Illinois and Missouri. In the year 1939 Central was engaged in the manufacture and sale of beer, and desired to acquire the right to use the name "Lemp" in connection with the sale of its beer. To achieve this purpose, on August 25, 1939, it entered into a written contract in which it agreed to pay plaintiff certain royalties on all beer brewed and sold by Central "Under a corporate name including the name 'Lemp.'" In this contract Central was granted an option, for a period of five years, to purchase all of plaintiff's assets including the right to use plaintiff's corporate name. In October, 1939, Central caused its corporate name to be changed to Wm. J. Lemp Brewing Company and thereafter operated under that

name, and beginning November 1, 1939, it manufactured beer which it sold under the Lemp name.

Prior to November 24, 1941, Wm. J. Lemp Brewing Company, formerly known as Central, was adjudicated a bankrupt in the United States District Court for the Eastern District of Illinois. November 24, 1941, pursuant to the order of the Bankruptcy Court, all of the bankrupt's assets, including its contract with plaintiff, were sold. November 17, 1941, defendant was incorporated under the laws of Illinois under the name of "Lemp Brewing Company" and ultimately became the owner of all of the bankrupt's assets, and thereafter until February 28, 1945, manufactured and sold beer under the Lemp name and paid plaintiff all the royalties as provided by the contract of August 25, 1939.

On November 30, 1944, defendant advised plaintiff of its intention to abandon the name "Lemp" as part of its corporate name and to discontinue use of the name "Lemp" in connection with its beer, and that from and after February 28, 1945, it would consider the contract of August 25, 1939 terminated. December 29, 1944, defendant changed its name to "Ems Brewing Company" and beginning March 1, 1945, discontinued the use of the name "Lemp" in connection with its beer.

Plaintiff in the first count of its complaint prayed that the court decree that the acts of defendant in abandoning "Lemp" as part of its corporate name in discontinuing the manufacture and sale of beer under the Lemp name, and in refusing to pay royalties constituted a breach of contract, and in the second count alleged that as a result of defendant's abandonment of the name Lemp as part of its corporate title and of its discontinuance of the manufacture and sale of beer under the Lemp name, it was damaged in the sum of $750,000.

After defendant had filed its answer, it moved for a judgment on the pleadings, on the ground that the contract upon which the claim was based provided for the payment of royalties only on beer brewed and sold under the name "Lemp," and that the contract was executory and terminable at the will of either party.

The District Court was of the opinion that the contract was complete within itself and did not admit of extraneous evidence to aid in its interpretation; that the complaint failed to state a claim upon which relief could be granted because defendant was under no obligation to continue the brewing and sale of beer under the name of Lemp or precluded from selling beer under any other name; that defendant was under no obligation to pay royalties to plaintiff upon any beer manufactured and sold under any name other than Lemp; and that five years after August 25, 1939, if the option to purchase was not exercised, the contract was terminable at will by either party and that the notice to terminate given by the defendant was reasonable.

In arguing for a reversal, plaintiff points to the fact that the contract recites that the parties "deem it to be to their mutual advantage that through their mutual cooperation and under their mutual supervision a high quality beer be manufactured and produced by the First Party [Central], to be sold under a name or designation containing the name 'Lemp.'" It calls attention to the opening paragraph of the royalty clause which provides for the payment of royalties on all beer manufactured and sold by Central, and to an exception contained in Clause (c) of that paragraph which provides: "In the event arrangements are made by First Party with the consent of Second Party to brew or sell a beer under a name or conditions which entail the payment of royalties to some other person, * * * then it is understood and agreed that no royalties whatsoever shall be paid on such beer by First Party to Second Party under this contract, * * *." Plaintiff then argues that defendant was bound to manufacture and produce a high quality beer under the Lemp name, regardless of its corporate title. With this contention we cannot agree.

The object of construction is to ascertain the intention which the parties have expressed in the language of their contract, and where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intention of the parties. Where a written contract purports on its face to be a complete expres-

sion of the whole agreement it is presumed that the parties introduced into it every material item and term, and in construing it, no words can be added to the contract so as to change the plain meaning of the parties as expressed therein. Green v. Ashland State Bank, 346 Ill. 174, 182, 178 N.E. 468; Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corporation, 395 Ill. 429, 433, 70 N.E.2d 604; and Domeyer v. O'Connell, 364 Ill. 467, 4 N.E. 2d 830, 180 A.L.R. 476.

In the instant case no claim of fraud or overreaching is made or claimed. The only thing the contract bound defendant to do was to pay royalties based upon the sale of beer sold under the Lemp name. This, it seems, is conceded, since plaintiff in its brief states: "The primary objective of the contract was the manufacture and sale of Lemp beer and the payment of compensation to the plaintiff based upon the amount of beer sold." The language used in the contract is certain, unambiguous, and speaks for itself. The contract does not disclose any language expressing an intention of the parties that the contract should continue in perpetuity, and nowhere in the contract is there any time fixed during which the contract is to continue in force, except as we have already noted,—that Central was granted an option for a period of five years to purchase all of plaintiff's assets, and that plaintiff agreed that during this period of five years it would not sell its assets or its rights to the use of the name "Lemp." In such a situation, we think the contract was terminable at the will of either party after the five year option period had expired. See Joliet Bottling Co. v. Joliet Citizens' Brewing Co., 254 Ill. 215, 219, 98 N.E. 263; First Mission Covenant Church v. Rockford Broadcasters, Inc., 324 Ill.App. 8, 56 N.E.2d 632; Staroske v. Pulitzer Publ. Co., 235 Mo. 67, 138 S.W. 36; Paisley v. Lucas, 346 Mo. 827, 143 S. W.2d 262. Any other construction would require the addition of words not used and add thereto conditions and terms about which the contract is silent. Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corporation, supra, 395 Ill. at page 433, 70 N.E.2d at page 607.

Plaintiff calls attention to the fact that the contract does not on its face disclose where it was executed; that the complaint does not allege the place of execution; that the court heard no evidence as to the place of the execution of the contract; and that under the contract defendant had the right to sell its beer and use the name Lemp throughout the United States. It asserts that in this state of the record, and under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the court could not determine the law governing the interpretation of the contract until the pleadings or proofs established the facts as to the place where the contract was executed.

In answer to this contention, it will be enough to say that in a federal court the judge judicially notices the law of every State in the Union. Lamar v. Micou, 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94. The general rule is that the law of the State or country in which a contract is made governs the contract, its nature, validity, obligation, interpretation and legal effect, and all matters of substance involved therein. 17 C.J.S., Contracts, § 12. And if a contract is made in one State (plaintiff intimates that the contract was executed in Missouri) and is to be performed in another, and the States are governed by different laws, the law of the place where the contract is to be performed will prevail over the law where the contract was entered into, and it will be enforced under the law of the place of performance. Parties are presumed to contract with reference to the law of the State where their contract is to be performed, and to be governed by such law rather than the law of the State where the contract was entered into. George v. Haas, 311 Ill. 382, 385, 143 N.E. 54. However, federal courts in diversity of citizenship cases are governed by the conflict of laws rules of the courts of the State in which they sit. Order of United Commercial Travelers v. Meinsen, 8 Cir., 131 F.2d 176, 179. But be that as it may, here, the contract is clear and unambiguous. Its interpretation was solely for the court, Hines v. Ward Baking Co., 7 Cir., 155 F.2d 257. Moreover, in view of the holdings of the

Missouri courts already noted, it is immaterial whether the law of Missouri or of Illinois governs the construction of the contract, and since the contract would be terminable at will under the law of either State, no question of conflict of laws is involved.

The judgment of the District Court is affirmed.