### TATE et al. v. SHOBER.

#### No. 1373.

District Court, E. D. Pennsylvania.

July 20, 1943.

See, also, 130 F.2d 631.

Samuel B. Fortenbaugh, Jr. (of Shields, Clark, Brown & McCown), of Philadelphia, Pa., for plaintiffs.

Herman H. Krekstein, of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is an action for damages for breach of an alleged oral agreement by the defendant to pay $5,000 for an assignment of five exclusive agency contracts for the sale of coal. I make the following special

### Findings of Fact.

1. Plaintiff Tate is a citizen of Ohio; plaintiff Wattles is a citizen of New York; plaintiff Continental Collieries, Incorporated, is a corporation incorporated under the laws of Delaware; defendant is a citizen of the Commonwealth of Pennsylvania; and the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

2. In and prior to March 1938 plaintiff Continental Collieries, Incorporated, was engaged in the business of selling bituminous coal as sales agent for various producers of such coal.

3. In and prior to March, 1938, plaintiff Wattles was engaged as sales agent for producers of bituminous coal and as New York representative of other such sales agents.

4. Between March 10, 1938, and October 6, 1938, plaintiff Wattles procured exclusive sales agency contracts for four mines in Tioga County, Pennsylvania, in which contracts plaintiff Continental was named as the sales agent.

982

5. Each of the contracts was for a term of five years and provided that Continental was to receive a commission of ten per cent of the price of the coal sold, and was to guarantee payment of the purchase price by the purchasers.

6. Plaintiff Wattles also negotiated with Patrick B. Brown, Harold Weikel and Willard P. Wolfe for the purpose of obtaining for Continental a similar exclusive selling agency contract for the coal to be mined at a mine located at Antrim, Pennsylvania. On August 30, 1938, these parties sent the following letter, from Antrim, to Wattles:

"Mr. F. M. Wattles, Sales Agent,
"Continental Collieries,
"17 E. 42nd Street,
"New York City
"Dear Sir:
"A corporation about to be formed, the principles of which are Patrick B. Brown, Harold Weikel, and Willard O. Wolfe desire to enter into a sales marketing agreement for the sale of coal from property now under lease at Antrim, Pa., with yourself and principals, the Continental Collieries, Inc., Cincinnati, Ohio.

"This coal to originate on the 4,000 acre Howell & Sill tract and to be put through the Cleaning and Sizing tipple at Antrim, Pa.

"It is understood that the basic points will be along the lines of past agreements under which we have done business. It is our absolute satisfaction with your past handling of our coal that motivates entering this new sales agreement.

"As soon as our corporation charter is in effect we will arrange and sign a sales contract.
                "Very truly yours,
                /s/ "Patrick B. Brown
                /s/ "Harold Weikel
                /s/ "Willard O. Wolfe"

7. In consideration of Wattles' services in procuring these contracts and the letter referred to in the previous finding, plaintiff Continental entered into contracts with Wattles to pay him half of the net proceeds received from the sale of the coal of these mines, and constituted Wattles its New York sales representative.

8. Defendant, in 1938 and thereafter, was a partner in a firm engaged in selling iron, coal, and other commodities.

9. In the latter part of 1938 Wattles interested defendant in financing the increased production for sale of Tioga County coal.

10. On or about January 4, 1939, defendant and Wattles went to the offices of Continental in Cincinnati, Ohio, where defendant orally agreed to purchase assignments of Continental's right, title and interest in the five exclusive sales agency "contracts" for $5,000.

11. After January 4, 1939, plaintiff Wattles no longer represented Continental as sales agent or otherwise.

12. On January 13, 1939, Wattles wrote from New York, on behalf of defendant, the following letter to plaintiff Tate as President of Continental:

"Ben E. Tate, President
"Continental Collieries, Inc.
"Carew Tower, Cincinnati, Ohio
"Dear Ben:
"I am attaching hereto contract reciting agreement between Samuel L. Shober, Jr., yourself, myself and Continental Collieries, Inc.

"If you will execute the original and one copy and return with the original sales contracts attached, Mr. Shober will issue his check in your favor for $5,000 upon receipt of which I will turn over to him the executed papers and contracts and simultaneously mail you Mr. Shober's check.
                "Very truly yours,
                /s/ "F. M. Wattles"

13. Plaintiffs Tate and Continental duly executed the enclosed assignments of the five exclusive sales agency contracts, and returned them to Wattles with the following letter:
"Mr. F. M. Wattles,
"17 E. 42nd Street,
"New York City
"Dear Ted:
"I have your letter of January 13 attaching in triplicate a contract between yourself, Continental Collieries and Ben E. Tate. We have executed this contract and attach two copies. Attached you will find the original contracts with the mining companies outlined in the contract described above.

"As discussed, you will act as trustee in handling the closing of this contract as you have described in the last paragraph of your letter of January 13, and send us Mr. Shober's check for $5,000 upon delivery of this contract to him.
                "Very truly yours,
"BET:LG        Ben E. Tate—President"

14. Upon receipt of the assignments, Wattles notified the defendant that they were on hand and would be delivered to defendant upon receipt of his check for $5,000, but defendant did not then nor thereafter pay this sum.

15. Defendant caused a corporation known as the Antrim Coal Company to be formed to operate the mine at Antrim, Pennsylvania, and gave approximately twenty-five per cent of the stock to Wattles.

16. Defendant purchased the interest of the three partners, Brown, Weikel and Wolfe, who were lessees of the mine property at Antrim, by cash in one instance and stock in the Antrim Coal Company in the other two.

17. Antrim Coal Company undertook to, and did, produce coal from the property leased at Antrim, Pennsylvania.

18. Wattles, under the name of F. M. Wattles and Company, after January 4, 1939, sold coal produced by the Antrim Coal Company.

## Discussion.

Certain of the principal issues in this case have been formulated by the decision of the Circuit Court of Appeals in a prior stage of this litigation. Defendant originally filed a motion to dismiss the complaint on the ground that it failed to allege that defendant or his agent signed a written memorandum of the sale of the contracts in question as required by the provisions of the Pennsylvania Sales Act of 1915, P.L. 543, § 4 as amended, 69 P.S. § 42, commonly known as the Statute of Frauds relating to personalty. In answer to plaintiffs' contention that they had alleged that Wattles, in writing the letter of January 13, 1939, transmitting the assignments for execution, had acted as defendant's agent, and that this letter was sufficient compliance with the Statute of Frauds, defendant argues that since the complaint showed that Wattles was a plaintiff and had an interest in the subject matter of the sale, he was not legally competent to bind the defendant under the Statute of Frauds. This contention was sustained by the District Court and defendant's motion to dismiss was granted. 41 F.Supp. 478.

On appeal by the plaintiff, the judgment of the District Court was reversed by the Circuit Court of Appeals, 3 Cir., 130 F.2d 631, which remanded the case for further proceedings. The facts which the Circuit Court held, if proved, would entitle plaintiff to relief are clearly set forth in the opinion of Judge Jones, at page 635, of 130 F.2d as follows:

"In the instant case the amended complaint alleges the making of the oral contract of assignment and the execution of a written memorandum signed by one purporting to be the authorized agent of the party to be charged therewith. True enough, there is an allegation that the ostensible agent had an interest in the subject matter of the assignment, but there is a further averment that the agent had no real interest in the chose which was the subject matter of the sale and assignment. If the claimant can by proper proof establish the latter fact, the question of the agent's interest drops out of the case and at the same time his right to sign the memorandum for the party to be charged therewith may be established. Whether the defendant's sale of coal from mines covered by the agency contracts, as averred in the complaint, grew out of his receipt and acceptance of the benefit of the assignment would also depend upon the proofs as to Wattles' capacity and authority to accept delivery of the assignment for Shober. In these circumstances it can hardly be said that it appears 'to a certainty' from the complaint that Continental is not entitled to 'relief under any state of facts which could be proved in support of the claim.'"

At the trial there were but three witnesses—plaintiffs Tate and Wattles and the defendant Shober. Their testimony and the other evidence in the case presents sharp conflict on the issues formulated by the Circuit Court of Appeals as well as upon other factual matters. To understand and determine these issues and the relationships between the parties a rather detailed consideration of the evidence is necessary.

Plaintiff Wattles was an agent for the sale of coal and maintained offices in New York. During 1938 he obtained from operators of mines in Tioga County, Pennsylvania, a number of exclusive sales agency contracts for plaintiff Continental, which undertook to guarantee payment by the purchasers, and he became Continental's sales agent in New York. In addition, Continental, by written contracts, agreed to pay Wattles one-half of the commissions earned during the five year term

of the sales agency contracts. The production of coal from the mines was apparently insufficient to make this venture profitable and Wattles, with the knowledge of Continental, sought to interest defendant and others in investing funds to promote the productivity of these mines. Defendant became interested in this proposition, particularly with respect to the mine at Antrim, Pennsylvania, and in December of 1938 instructed Wattles to purchase for him the interest of one of the three partners who were operating this mine, which Wattles did. On January 4, 1939, Wattles and defendant went to Cincinnati to the offices of the plaintiff Continental, the purpose of the visit being a matter of dispute. Considering first Wattles' testimony on this and subsequent happenings, the purpose of the conference was to negotiate with Continental principally for the purchase of the right to sell coal of the Antrim mine, because defendant had expressed an unwillingness to invest in the development of the mine without controlling the sale of coal produced there. At this meeting, according to Wattles' testimony, defendant orally agreed to purchase the sales contract for the Antrim and four other Tioga County mines for $5,000, and agreed to prepare a written assignment. It was understood by all the parties that Wattles would terminate his association with Continental and associate himself thereafter with defendant in this new venture.

On the return trip from Cincinnati to New York defendant and Wattles stopped off in Ohio and negotiated an arrangement with the vendor of certain equipment which had been sold to the operators of the Antrim mine on conditional sale. The default of the conditional vendees was adjusted by defendant and the vendor agreed to permit the defendant to continue using the equipment.

On his return to New York Wattles immediately took Continental's name off his door. He testified that at this time his account with Continental was squared up and that no sums were due him. Thereafter he continued his sales operations as a partner of the defendant under the name of F. P. Wattles and Company and received advances from and sent accountings to the defendant.

Wattles further testified that the following week defendant brought him three copies of a written assignment of all the right, title and interest of Tate, Wattles

and Continental to the five exclusive sales agency contracts, and instructed him to forward them to Cincinnati for execution, which he did by letter dated January 13, 1939. It is this letter which plaintiffs contend is a memorandum meeting the requirements of the Statute of Frauds. The executed assignments were returned to Wattles with instructions to deliver them to defendant upon receipt of his check for $5,000. Defendant failed to give Wattles his check and he therefore never delivered the assignments to defendant.

Thereafter defendant organized a corporation known as the Antrim Coal Company, part of the stock of which he gave to Wattles, part to two of the lessees of the Antrim mine property as consideration for the transfer of their rights therein, and the balance of which he retained. This corporation thereafter developed and operated the mine and, through Wattles, sold some coal produced there.

Defendant's testimony was that his sole purpose in going to Cincinnati on January 4, 1939, was merely to notify Continental, with which firm his own firm had friendly relations, that Wattles was going to become associated with him and to obtain Continental's consent. He testified that the five contracts were offered to him for $5,000, but denied that he agreed to buy them. He further denied that he prepared, or had some one else prepare, the assignments and that he gave them to Wattles to forward to Cincinnati for execution. He testified that he first saw the contracts and assignments at Wattles' office after the assignments had been executed, and that at that time his lawyer had examined the contracts and told him that they were not assignable and that he should not buy them.

The testimony of Tate was that defendant orally agreed at the Cincinnati meeting on January 4, 1939, to purchase the five contracts for $5,000 and to prepare the written assignments. He confirmed Wattles' testimony that he thought Wattles' relationship with Continental had terminated and that there was nothing owing to Wattles at that time. He further testified that defendant acknowledged his indebtedness for the $5,000 on a number of occasions, but said that he did not have funds available to pay it. Upon one of these occasions defendant told him he thought he could get the Antrim Coal Company to assume this obligation. There-

after defendant, on June 8, 1939, wrote Tate the following letter:

"Mr. Ben E. Tate
"Carew Tower
"Cincinnati, Ohio
"Dear Ben:

"I am sorry to have been so long in getting some word to you concerning the outcome of the matter which we discussed in New York.

"As matters now stand, it is absolutely impossible for me to put over with the other directors and stockholders of the Antrim Coal Company the deal we agreed upon. However, and very confidentially please, there are a number of changes in the Antrim Coal Company which I hope will be consummated within the next few weeks. I will do everything I can to meet your ideas at that time.

"Very truly yours,
"SLS:SG" /s/ Samuel L. Shober"

To this letter, on June 10, 1939, Tate replied as follows:

"Mr. Samuel L. Shober, Jr.
"c/o Hickman Williams & Company
"1608 Walnut Street
"Philadelphia, Pennsylvania
"Dear Sam:

"I am delighted to get your letter of June 8. I am terribly disappointed that you were not able to work this situation out. I want to play along with you, as I told you in New York. I intend to do so, and will do so, as long as you acknowledge the obligation of $5,000. I had the utmost confidence in you and your standing and reputation at our first meeting, when you offered to give me a check for $5,000, in this office, and I explained it would be all right with me to wait to cover this deal until you got home. That has been a long time ago.

"You know, the very fact that we made the deal with you, prevented us from making it with Tad Jones, on which we would have gotten a check for $5,000. The fact that we made the deal with you, stopped us from activities in that field and stopped us from a development which you are pursuing now.

"I will be interested to know what develops, as outlined in your letter of June 8.

"Hope to see you soon.
"Best regards.
"Very truly yours,
"bet-s Ben E. Tate President"

The first factual issue is whether defendant did or did not orally agree to purchase contracts on January 4, 1939. I am convinced that he did. Despite his testimony that some time in January his attorney examined the contracts in question and advised him not to purchase them, defendant made no effort to explain his apologetic letter to Tate five months later, in which he stated that he could not get the other directors and stockholders of the Antrim Coal Company to accept the "deal agreed upon." Nor did he deny receiving Tate's answering letter of June 10, 1939, and he nowhere suggested that he remonstrated against Tate's reference therein to his acknowledgment of his liability for the $5,000.

This conclusion likewise disposes of defendant's subsidiary contention that plaintiffs' recovery is barred because their complaint is for breach of a contract to purchase five exclusive agency contracts for the sale of coal and one of these "contracts" was on its face not an actual contract. This is unquestionably true. But since defendant, by his own admission, examined the contracts personally and by his attorney, and subsequently acknowledged, as I have found, that he was still liable for the agreed purchase price, there was an affirmance of his agreement to purchase and a waiver of the fact that the one exclusive agency "contract" was plainly not a binding written agreement. Since under Rule 8(f) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, pleadings are to be construed so as to do substantial justice, the fact that the complaint refers to five "contracts" will not relieve defendant of his obligation to pay the agreed purchase price for these instruments, which obligation he recognized and acknowledged after full knowledge that one of them was not a contract.

I have also concluded from the evidence that defendant authorized Wattles to write the letter of January 13, 1939, on his behalf. According to the testimony of Wattles, defendant, after he had orally agreed to pay the $5,000 for the assignment of the contracts, prepared the assignments and requested Wattles to forward them to Cincinnati for execution. In view of the facts that Wattles was the person who had interested defendant in the development of the Antrim mine, had been instrumental in effecting the deal for the

purchase of the contracts, and was at this time an employee or associate of the defendant, it seems clear that defendant, in directing him to send off the assignments for execution, impliedly authorized him to do all the acts necessary to consummate the deal, such as the sending of the letter in question to Continental.

There remains for determination the question whether Wattles had such an interest in the subject matter of the sale as to debar him legally from executing, on behalf of defendant, a memorandum satisfying the Statute of Frauds. Defendant contends that since Wattles was entitled to half the commissions earned by Continental under the agency contracts, since he was named as an assignor in the assignment of those contracts, and since he is a plaintiff in this action, it is clear that he had an interest in the subject matter of the sale. Whatever may have been Wattles' interest prior to January 4, 1939, in the contracts sold by Continental, the evidence shows that on that date he severed his relationship with Continental and became associated with the defendant and that he voluntarily relinquished at that time his right to a share of the commissions earned under that contract. At that time his account with Continental was squared up and it owed him no money. Therefore, on January 13, 1939, when he wrote the letter on behalf of the defendant transmitting the assignments to Continental for execution, he had no such interest in the proceeds of the sale as would disqualify him from acting as defendant's agent.

I am accordingly satisfied that the plaintiffs have established that Wattles, in the words of the Circuit Court of Appeals, "had no real interest in the chose which was the subject matter of the sale and assignments", and that, under its decision, his right to sign the memorandum for the party to be charged therewith could be established. Since I have concluded that Wattles was in fact authorized to act for defendant in writing the letter relied upon by plaintiffs, the elements of the right to recover are all present.

In view of the evidence that neither Tate nor Wattles is a real party in interest, judgment will be entered in favor of plaintiff Continental only.

I make the following

### Conclusions of Law.

1. Wattles was duly authorized by defendant to write on his behalf the letter of January 13, 1939, to Continental transmitting the assignments of the contracts for execution, and agreeing to pay $5,000 for the assignments.

2. On January 13, 1939, Wattles had no interest in the contracts assigned to defendant or in the proceeds of the sale.

3. The letter of January 13, 1939, from Wattles to Continental Collieries, Incorporated, constitutes a memorandum executed by the defendant's agent on his behalf within the requirements of the Statute of Frauds of the Pennsylvania Sales Act.

4. Defendant, with knowledge that the so-called exclusive sales agency "contract" as to the coal mine at Antrim was not a valid contract, reaffirmed his agreement to purchase this document and the four contracts in suit for $5,000.

5. Judgment is hereby entered in favor of plaintiff Continental Collieries, Incorporated, against the defendant in the amount of $5,000 with interest thereon from January 16, 1939.